[Civ. No. 12253. Third Dist. Nov. 4, 1969.]

EIMO GEORGE FUNKE, Plaintiff and Appellant, v.
DEPARMENT OF MOTOR VEHICLES, Defendant and Respondent.

## COUNSEL

Lally, Martin & Chidlaw and William Chidlaw for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and J. L. Henderson, Jr., Deputy Attorney General, for Defendant and Respondent.

OPINION

**DAVID, J. pro tem.**\*—The respondent department suspended petitioner-appellant Funke's driver's license pursuant to Vehicle Code section 13353; he was denied a writ of mandate to compel the Department of Motor Vehicles to vacate its order; wherefore he appeals.

Petitioner was driving his 1956 Thunderbird automobile southbound on Highway 80 in Sacramento, between the entrance to the freeway at Marconi Avenue and the P Street off-ramp. He was weaving from the middle lane and crossed over into the lane closest to the shoulder four times and into the lane near the center three times. Observing this, Highway Patrol Officer Ripley followed, putting on his red light and blowing his siren.

Petitioner slowed to approximately 30 miles per hour; the officer pulled even with him and motioned him to pull over. After proceeding approximately two miles, petitioner complied. Officer Ripley then asked petitioner to get out of his car, which he did with difficulty. Petitioner had an odor of alcohol on his breath; he was unable to perform simple roadside balance tests, and his speech was slurred. These facts validly permitted the arresting officer to conclude petitioner was driving a vehicle while intoxicated. (*People v. Spencer* (1963) 60 Cal.2d 64, 88 [31 Cal.Rptr. 782, 383 P.2d 134]; *Finley v. Orr* (1968) 262 Cal.App.2d 656, 666-667 [69 Cal.Rptr. 137]; *People v. Talley* (1967) 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]; *People v. Grubb* (1967) 250 Cal.App.2d 714, 717 [58 Cal.Rptr. 670].)

The officer then placed petitioner under arrest, took him to the city hospital, and requested him to take one of the three blood alcohol content tests. He refused to take any of the tests prescribed by Vehicle Code section 13353.[1]

Petitioner now urges that he did not in fact refuse, but insisted that it was

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Vehicle Code section 13353 in pertinent part reads as follows:

"(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine.

" . . . . . . . . . . . .

"(b) If any such person refuses the officer's request to submit to a chemical test,

not fair; that he wanted to consult his doctor, and further that he should have had a right to consult counsel before he was required to take a blood test. His contention that he was not allowed to call his doctor before the test was refused arose in respect to the phone calls he was allowed to make at the police station. This alleged refusal, if in fact true, was subsequent to his refusal to take the tests at the city hospital. ■ It is a question of fact for the trial court to determine whether the driver was given the statutory advice relative to the tests and whether he refused the test. (*Walker* v. *Department of Motor Vehicles* (1969) 274 Cal.App.2d 793, 799 [79 Cal. Rptr. 433].) ■ There is no right to counsel's presence before the blood test is taken. (*Reirdon* v. *Director of the Dept. of Motor Vehicles* (1968) 266 Cal.App.2d 808, 810-811 [72 Cal.Rptr. 614]; *Ent* v. *Department of Motor Vehicles* (1968) 265 Cal.App.2d 936, 938 [71 Cal.Rptr. 726]; *Fallis* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 373, 383 [70 Cal.Rptr. 595]; *Finley* v. *Orr, supra,* 262 Cal.App.2d 656, 663-665.) There is no contention nor evidence here that any confusion on petitioner's part resulted from giving him the constitutionally required warning relating to testimonial disclosures.

■ Petitioner next contends that the department acted improperly in not considering the blood test taken after the arrest by petitioner's doctor. It is common knowledge that the time lapse between the injection of alcohol and the blood test affects the accuracy of its result. While one may have such a supplemental test, it is not a substitute for the one required to be taken on arrest, and does not comply with the mandate of the statute. (*Westmoreland* v. *Chapman* (1968) 268 Cal.App.2d 1, 4 [74 Cal.Rptr. 363];

the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. No such suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c).

"(c) The department shall immediately notify such person in writing of the action taken and upon his request in writing and within 15 days from the date of receipt of such request shall afford him an opportunity for a hearing in the same manner and under the same conditions as provided in Article 3 (commencing with Section 14100) of Chapter 3 of this division. For the purposes of this section the scope of the hearing shall cover the issues of whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor, whether the person was placed under arrest, whether he refused to submit to the test after being requested by a peace officer, and whether, except for the persons described in paragraph (a) above who are incapable of refusing, he had been told that his driving privilege would be suspended if he refused to submit to the test."

*Fallis* v. *Department of Motor Vehicles, supra,* 264 Cal.App.2d 373, 382; see also, *Finley* v. *Orr, supra,* 262 Cal.App.2d 656, 667.) *In re Martin* (1962) 58 Cal.2d 509 [24 Cal.Rptr. 833, 374 P.2d 801], cited by petitioner, does not relate to the facts now before us.

After the administrative hearing petitioner was tried and convicted on charges of operating a motor vehicle while intoxicated. Petitioner contended at the administrative hearing, and now asserts, that his constitutional rights were impaired because the hearing was conducted prior to his trial on the criminal charge. Any compulsion was a personal, not a legal, compulsion. Appellant asserts illegal compulsion, in that it was necessary for him to testify at the department proceeding to protect his driver's license. The taking of a blood test does not involve the privilege against self-incrimination. We find no distinction between the situation where a criminal defendant has a choice to testify or not to testify and chooses to do so in order to protect his liberty, and petitioner's choice to testify in a civil proceeding to protect a driving privilege. Assuming self-incrimination, however, the compulsion of circumstances is not a testimonial compulsion which the Constitution prohibits. (Cf. *Goldberg* v. *Regents of the University of Cal.* (1967) 248 Cal.App.2d 867, 885 [57 Cal.Rptr. 463].)

The proceedings under Vehicle Code section 13353 are civil, not criminal, in nature, although they may result in the denial of a valuable privilege. (*Finley* v. *Orr, supra,* 262 Cal.App.2d 656, 665.) The intention of the Legislature was to reduce the carnage on our highways caused by operation of motor vehicles by intoxicated persons. (*Bush* v. *Bright* (1968) 264 Cal.App.2d 788, 790 [71 Cal.Rptr. 123].) It would frustrate the legislative intention to postpone suspension or revocation of the driving privilege until conclusion of the frequently delayed judicial proceedings.

Petitioner argues that prejudice resulted in his criminal trial from his disclosure of his defenses at the administrative proceeding and from the fact that his attorney cross-examined the prosecution witness in advance of the criminal trial. If there was any legal ground of complaint based on these contentions, it pertained only to the criminal trial. Since a criminal trial is for the purpose of developing the truth, we cannot accept the view that there is any unconstitutional prejudice if he discloses his evidence in advance of the criminal trial. Petitioner does not show in what way he was prejudiced, nor does he show that his alleged defenses fell without the scope of discovery to which the prosecution in a criminal case is entitled. (*Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 59, 62 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213].) At the hearing, petitioner attempted to show that various physical ailments might have produced an appearance of intoxication. This might have been a defense to the criminal charge against

him for drunk driving. The trial transcript is not before us, so we cannot determine whether or not he urged the same defense at the trial.

Distinguishing such cases as *Silver* v. *McCamey* (1955) 221 F.2d 873, 875 [95 App.D.C. 318] (dealing with the effect of an acquittal on a criminal charge upon a prior revocation of a taxicab license), it is clear that the Department of Motor Vehicles did not conduct the administrative hearing to determine whether or not petitioner was driving while intoxicated. Its administrative determinations were focused on whether or not petitioner was arrested with probable cause; did he receive the proper explanation of the requirement to submit to one of the three tests to determine the alcoholic content of his blood; was he advised of the consequences of refusal, and did he refuse. It is apparent that these questions and those in the criminal trial are quite different, other than the prima facie showing of probable cause to arrest him. We always have in mind the fact that the test imposed is as much designed to benefit the one detained if he is in fact not intoxicated, as it is to show the degree of intoxication if he is.

■ Petitioner fails in his attack on the hearing conducted by the Department of Motor Vehicles. The Vehicle Code itself does not provide for reporting the proceedings at such hearings. Vehicle Code section 14112 provides, however, that in a formal hearing all matters not covered in that code will be governed by the Government Code provisions relative to administrative hearings.

Section 11512, subd. (d) of the Government Code provides that hearings shall be reported by a "phonographic reporter." The proceedings herein comply. They were recorded by a stenographer and a Stenocord machine. Within the intendment of the statute, any method whereby a literal record is made of what is said, from which by audio or visual methods an accurate transcription thereafter can be made, is embraced within the requirement. We note that by Statutes of 1968, chapter 1062, section 2, section 14107 of the Vehicle Code now provides that hearings ". . . may be recorded by a phonographic recorder or otherwise perpetuated by mechanical, electronic, or other means capable of reproduction or transcription." In this case, petitioner shows no prejudice resulting from the means used.

The contention that the hearing was invalid because the hearing officials were not lawyers has been rejected so often that we need only refer to the latest pronouncement. (*Noll* v. *Department of Motor Vehicles* (1969) 274 Cal.App.2d 281, 283 [79 Cal.Rptr. 236].)

■ Petitioner next contends that Vehicle Code section 13353 is invalid because it provides for the summary suspension of a license upon

the sworn statement of an arresting officer. The receipt of such affidavits is authorized by the statute; affidavits when authorized by statute are utilized to institute many legal and administrative proceedings. (Code Civ. Proc., § 2009.) They are sufficient to support injunctive restraints imposed by a court, pending a hearing, in order to inhibit conduct which, if unrestrained, might cause legally irreparable injury.

There is no identity between the administrative proceeding and the criminal charge. We note that in administrative law, hearsay evidence is proper when it is of a type or sort upon which responsible persons are accustomed to rely in the conduct of serious affairs. (Gov. Code, § 11513, subd. (c).)

Additionally, the person whose license has been suspended has the right to a hearing if he requests it. In this instance, petitioner had a hearing, at which the officer who made the arrest was cross-examined by petitioner's counsel. If he does not choose to ask for a hearing to contest the statements of the affidavit, there is no denial of due process, since the hearing provides for it.

One whose lack of management of a motor vehicle on a street or highway has made it an errant projectile on one occasion cannot complain if he is under restraints while his conduct is investigated. The rights of others are vitally involved when such a person demonstrates his lack of restraint.

As we determine that no clear and mandatory duty to vacate the order is established, the judgment denying the writ is affirmed.

Regan, Acting P. J., and Janes, J., concurred.

A petition for a rehearing was denied December 3, 1969.