[Civ. No. 33183. Second Dist., Div. Five. Nov. 18, 1969.]

MARTIN DeFOREST HULSHIZER, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

**COUNSEL**

Maher & Mattier for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Edmond B. Mamer, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**REPPY, J.**—This is an appeal from a judgment of the superior court denying Martin DeForest Hulshizer a peremptory writ of mandamus to compel the Department of Motor Vehicles to annul an order revoking his driver's license.

In the early morning of January 24, 1967, two police officers of the City of Compton in a police car observed appellant driving his car in an erratic manner, and pursued him with red lights and ultimately with siren which appellant ignored. Instead, appellant drove to his home which was nearby. There, he was found by the officers to be very intoxicated, in a "stuporous" condition. His symptoms were strong and obvious.

He was arrested and taken to jail. The record does not disclose how much time intervened. However at the jail, although his speech was slurred, appellant's responses were clear and he gave positive answers. After an explanation that there are three types of alcoholic content test, one of which he must select and take, and that if he refused his driving privilege could be suspended, appellant was asked whether he would take any one of the three. Appellant's answer was, "No, I have read about those things in the paper." The record does not disclose what other questions were asked as to which appellant was said to have given clear and positive answers, but presumably they related to the booking procedure. No test was made.

Subsequently a hearing was held by a referee of the Department of Motor Vehicles and an order was made revoking appellant's driver's license. His petition to the superior court for a writ of mandate to compel vacation of the order was denied, and he appeals.

After reviewing the record before the referee, the trial judge found, in the language of section 13353 of the Vehicle Code that [appellant] "was not in a condition rendering him incapable of refusing to submit to a chemical test." Turning the double negative into the affirmative, the finding was that appellant's condition was such that he was capable of making the refusal which he did.

Appellant contends there is no substantial evidence supporting the finding. We do not agree. It is appellant's condition at the jail which is in question. There it was such that he made clear and positive answers to questions put to him including the crucial one under consideration. The details of the other queries and responses were not developed, but appellant's counsel was at liberty to inquire into them. Absent any weakening from such a line of questioning, the succinct but meaningful description of appellant's conduct was an adequate gauge of his condition.

As a result of our conclusion on the issues of sufficiency of the evidence, we do not reach the question of whether a self-reduction to a condition of incapability of refusal to be chemically tested by *voluntary* absorption of alcohol removes such a person from the provisions of section 13353 of the Vehicle Code.

The judgment is affirmed.

Stephens, Acting P.J., concurred.

**CHANTRY, J. pro tem.**\*—I concur in the judgment, but I believe that this court should not disregard respondent's reliance on the case of *Bush* v. *Bright,* 264 Cal.App.2d 788 [71 Cal.Rptr. 123], that self-induced intoxication is not to be considered in determining whether the party is "otherwise in a condition rendering him incapable of refusing to submit to a chemical test" as the term is used in section 13353 of the Vehicle Code. This interpretation of that section does not strike me as a reasonable interpretation of legislative intent. In support of its conclusion, the court in *Bush* relies on section 22 of the Penal Code and points to the rule in criminal cases where no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. The situations do not seem analogous for three reasons:

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

First, although the Legislature knew the tests were to be taken of people who would be intoxicated in many circumstances, it did not choose to include an exception similar to the provisions in section 22 of the Penal Code. Second, the phrase "otherwise in a condition rendering him incapable of refusal obviously includes a person incapable of understanding the significance of "a choice" and making an intelligent decision irrespective of the factors which rendered him incapable of refusal. If this Vehicle Code section is limited to one who is dead or unconscious, the meaning would be exceedingly restricted. Under the *Bush* case if "unconscious" were produced by consumption of alcoholic beverages, even that exception might be negated. Third, section 13353 of the Vehicle Code gives to the suspected driver the right of making a choice as to which one of the three tests he will take. It is anticipated that he will make a choice, for he does not have the right to remain silent. *Fallis* v. *Department of Motor Vehicles,* 264 Cal.App.2d 373 [70 Cal.Rptr. 595]. Administrative hearings involving the subject of intoxication tests are said in *Westmoreland* v. *Chapman,* 268 Cal.App.2d 1 [74 Cal.Rptr. 363], to be civil in nature and not related to the commencement of any criminal action against the licensee or the result of such action if any be commenced. *August* v. *Department of Motor Vehicles,* 264 Cal.App.2d 52 [70 Cal.Rptr. 172]; *Serenko* v. *Bright,* 263 Cal.App.2d 682 [70 Cal.Rptr. 1]. Despite the pronouncements in *Chapman* and *Serenko, Bush* reaches into the criminal code domain for the interpretation of a civil law provision.

In a criminal case the criminal would *escape* punishment for his crime, while applying that rule in construing this section has some of the aspects of *additional* punishment. Having in mind the supposed condition of those to be examined—under the influence of liquor to the extent that their driving ability is impaired—there is no reason to suppose that the Legislature intended what amounts to an additional penalty for those so sodden they were incapable of an intelligent choice by obtaining a meaningless "no" to a request they take a test.

The fact that a person arrested refuses to take a test does not prevent the authorities from making one. In *People* v. *Fite,* 267 Cal.App.2d 685 [73 Cal.Rptr. 666], it is held the evidence so obtained is admissible in a subsequent criminal prosecution. Thus, neither a test nor subsequent use of the result is prevented by a defendant's refusal.

"Our implied consent statute, including section 13353, was enacted to fulfill the need for a fair, efficient and accurate system of detection and prevention of drunken driving. (*People* v. *Sudduth,* 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; *Zidell* v. *Bright,* 264 Cal.App.2d 867

[71 Cal.Rptr. 111].) The immediate purpose of section 13353 is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. The long range purpose is, of course, to inhibit intoxicated persons from driving on the highways. (*Zidell* v. *Bright, supra,* at pp. 869-870.)" *Kesler* v. *Department of Motor Vehicles,* 1 C.3d 74 [81 Cal.Rptr. 348, 459 P.2d 900].

All the statute accomplishes is to impose a sanction by which it is hoped the test can be made peacefully and with the cooperation of the party. In view of this, it is reasonable to suppose it was intended that the person involved would have a choice. *Kesler* v. *Department of Motor Vehicles, supra.* If this be conceded, then it is only reasonable to conclude further that the Legislature intended that the choice be a meaningful one, made by a person capable of comprehension and of making a determination through reasoning and with an understanding of the results of his actions. It is about as sensible to ask an individual who has "passed out" from an excess of alcoholic beverage to take one of the three tests in question as it would be to ask a dead man to do so.