[Civ. No. 28188. First Dist., Div. One. Sept. 3, 1971.]

MERVYN JULIUS GOODMAN, Plaintiff and Respondent, v. VERNE ORR, as Director, etc., et al., Defendants and Appellants.

846

**COUNSEL**

Thomas C. Lynch, Attorney General, Wiley W. Manuel, Assistant Attorney General, and Jefferson Frazier, Deputy Attorney General, for Defendants and Appellants.

Herbert K. Walton, Jr., for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—The Department of Motor Vehicles and its director have appealed from a judgment which granted the petitioner below a peremptory writ of mandate commanding the setting aside of an order of suspension of his driver's license which had been promulgated pursuant to the provisions of section 13353 of the Vehicle Code following a formal hearing. The department and the director contend that the trial court erred in finding that the petitioner attempted to comply with conflicting directions of the law enforcement officer and did not refuse to submit to any chemical test. An examination of the findings and the evidence on which they were predicated[1] reveals that the petitioner did in fact refuse to submit to a chemical test, that the instructions, if deemed conflicting, were explained, and that any confusion in the mind of the petitioner was engendered not by the instructions given by the officers, but by his self-impaired ability to understand, whether induced by his partial intoxication or otherwise. The judgment must be reversed.

### I

The function of the trial court in matters of this nature has been defined in *James* v. *Dept. of Motor Vehicles* (1968) 267 Cal.App.2d 750 [73 Cal. Rptr. 452], as follows: "Since the deprivation of an existing license interferes with an existing vested right [citations], and since Department is a statewide agency of legislative rather than constitutional origin, the independent judgment of the trial court should be used to ascertain if the evidence was sufficient to support the findings of the administrative board in the instant case." (267 Cal.App.2d at p. 752. See also *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 914 [80 Cal.Rptr. 89, 458 P.2d 33]; *Walker* v. *Department of Motor Vehicles* (1969) 274 Cal. App.2d 793, 795 [79 Cal.Rptr. 433]; and *Finley* v. *Orr* (1968) 262 Cal. App.2d 656, 666 [69 Cal.Rptr. 137].) Here the court expressly recited in the findings, "Regardless of the construction placed upon the testimony by the Department, it is now independently construed by the Court to show that and the Court finds that petitioner attempted to comply with the conflicting directions of the law enforcement officer and did not refuse to submit to any chemical test."

In *Merrill* v. *Department of Motor Vehicles, supra,* the court restated the rule to guide this court on review as follows: "In a case wherein the trial court is authorized to conduct a limited trial de novo . . . the province

---

[1]The case was submitted on the transcript of the hearing before the referee for the department.

of the appellate court is analogous to that assumed by it in an ordinary civil appeal: only errors of law are subject to its cognizance, and a factual finding can be overturned only if the evidence received by the trial court, including the record of the administrative proceeding is insufficient as a matter of law to sustain the finding. [Citations.]" (71 Cal.2d at p. 915. See also *James* v. *Department of Motor Vehicles, supra,* 267 Cal.App.2d 750, 753.) The question, therefore, is whether there was substantial evidence to sustain the trial court's finding of fact that the defendant did not refuse to submit to any chemical test. With exceptions noted below, there is little conflict in the evidence. The findings, however, are inconsistent, and, as reconciled and supported by the evidence, demonstrate that there was a refusal within applicable principles of law.

## II

At the hearing before the department it was stipulated that the arresting officer had reasonable cause to believe that the petitioner was driving a motor vehicle upon a highway while under the influence of intoxicating liquor, and that the petitioner was lawfully arrested at 10:05 p.m. on March 28, 1969, for an alleged violation of section 23102, subdivision (a) of the Vehicle Code. The trial court made findings in accordance with the stipulation.

The following facts appear from the findings: At the time of the arrest an officer read the *Miranda* admonition to the petitioner from the standard printed card used by the California Highway Patrol.[2] To each statement petitioner replied, "I understand it," but when the statement had been read in its entirety, petitioner was asked if he understood and replied "No." The rights card was again read to petitioner, and after each statement petitioner was asked if he understood that statement, and each time replied "Yes."

After having been given the *Miranda* warning in full petitioner was handcuffed and transported by the patrol officer's car to the Marin County jail in the courthouse in San Rafael. There they were met by a laboratory technician who had been called to administer a chemical test. At approxi-

---

[2] When asked by counsel for the petitioner if the card contained all of the admonitions required under *Miranda,* the testifying officer answered in the affirmative and offered to produce a copy of the card. No action was taken on the offer, and counsel brought out that the witness' partner had advised the petitioner that he had a right to talk to a lawyer, and the right to have a lawyer present while he was being questioned. There was no other evidence of the contents of the card. (Cf. *Miranda* v. *Arizona* (1965) 384 U.S. 436, 479 [16 L.Ed.2d 694, 726, 86 S.Ct. 1602, 10 A.L.R.3d 974] and passim, which refers to the suspect's rights in connection with the process of interrogation.) Petitioner testified that at the time and place of his arrest he was told more than once that he had a right to have an attorney.

mately 10:45 p.m. (40 minutes after his arrest) petitioner was asked to submit to a blood test. Petitioner then stated he refused to submit to such test until he could call his lawyer.

One of the officers then read petitioner the standard implied consent admonition under section 13353 of the Vehicle Code. Petitioner was requested to submit to a chemical test, offered a choice of a blood, breath or urine test, and informed that a refusal would result in the suspension of his driving privileges for six months. Petitioner intially replied to the officer's request under section 13353 by saying, "I'm not going to take a test until I call my lawyer." Petitioner's request to see his lawyer and his apparent refusal to take a test at that time was the direct result of confusion produced by the *Miranda* warning and admonition given to him at the time of his arrest, and the apparently conflicting admonition and warning in the statement read to him from section 13353 of the Vehicle Code.[3] The statement under section 13353 was read to the petitioner two or three times.

After it was read to petitioner a second time, and petitioner again stated that he wanted to talk to his lawyer, the arresting officers advised him that his right to consult an attorney did not apply to the chemical test request, and that he would be permitted to contact his lawyer after he was booked.[4]

---

[3]The court generally found, "Petitioner did not refuse to take any test under Section 13353 except upon the statement that he wanted to see his lawyer first. Petitioner had been categorically told by the arresting officers that he had a right to an attorney at all stages of the proceeding, and his request to see his lawyer before taking a test, was based upon his understanding of the *Miranda* warning and right to counsel, as given by the arresting officers and his reliance thereon." The statement that petitioner "had been categorically told by the arresting officers that he had a right to an attorney at all stages of the proceeding" is not supported by anything in the record (cf. fn. 2).

The finding in the text above is supported by the following testimony of the petitioner:

Q. "And did you refuse to take that test?
A. "No. I wanted to see my attorney first, and since I was warned and advised I could get an attorney I wanted to speak with my attorney first.
Q. "And were you under the impression that you had a right to counsel?
A. "They told me that.
Q. "And was your refusal to take the blood test predicated upon your belief that you had the right to counsel?
A. "No. I wanted to speak to my attorney first.
Q. "Well, let me restate the question. Was your denial to take the blood test—or the chemical test—based upon your belief that you had a right to talk with your attorney?
A. "Yes.
Q. "And do you attribute that to the advice as given to you by Officer Freeman and Officer Cunningham?
A. "Yes."

[4]One of the arresting officers testified that petitioner refused to submit to the blood withdrawal; that he was advised of the requirements under section 13353; that after

Petitioner stated once again that he would not take a test until he could talk with his lawyer. He was then booked for a violation of section 23102, subdivision (a) of the Vehicle Code and no chemical test was administered.

The court found, in addition to the general finding referred to above (see fn. 3 above), that after receiving the specific advice from the officers the petitioner "remained confused because of both of the conflicting warnings and his partial intoxication," and more specifically, "When he declined to submit to a chemical test until he could speak with his attorney, petitioner had been doing a substantial amount of drinking, and his ability to understand the difference between a Miranda warning and the admonition under Vehicle Code Section 13353 was impaired. He at no time intended to refuse compliance with legal requirements, as he understood them, and at no time intended to or did refuse to consent to tests within the conditions he understood the officer to have specified."

he stated that he would not submit to any test and wanted to talk to his lawyer, the statement was read again; that when he again stated he wanted to talk to his lawyer, "We advised him that his decision as to whether to submit to a chemical test of his blood did not pertain to his right to an attorney; that the decision must be made his, by himself; that he would be permitted to contact his lawyer after the decision was made." According to the officer, the first time that the petitioner requested to see his lawyer, he was read the implied consent law, and, when he again asked for his lawyer on subsequent occasions, he was informed of the differentiation between the *Miranda* decision and the right to a lawyer pertaining to this test.

The petitioner, who was 66 years old at the time of his arrest, testified as follows:

Q. "Now, do you have any recollection, Mr. Goodman, of [the arresting officers] specifically telling you that you did not have the right to have an attorney?

A. "I don't recall. They never said any such thing.

Q. "You have no recollection—

A. "They said I had a right to have an attorney, but never not to have an attorney.

Q. "And had you understood the exact provisions of the law you would have subjected yourself to a chemical test; is that correct?

A. "Certainly.

Q. ". . . you've testified also that you were never informed by either of the officers at least that you were not entitled to have an attorney?

A. "The only time an attorney was mentioned was at the original time I could have an attorney.

Q. "Did they make any reference to your attorney other than that? Did they say anything else about your right to counsel or your right to an attorney?

A. "Nothing there at all. The only time was at the bridge. The first thing they told me I could get—whatever I say—I don't have to—in short, I don't have to answer any questions until I speak or with the advice of my attorney.

Q. "Is it possible that they might have mentioned something about your right to an attorney, or your right not to have an attorney, and you didn't pick it up?

A. "They didn't say anything about not having an attorney. My attorney's name was never mentioned until—the only time I could have an attorney—the original—at the bridge. And my attorney—it was never mentioned about an attorney after that."

The conflict between the testimony of the officer and that of the petitioner was resolved by the court in accordance with the officer's version.

■ The last findings are supported by petitioner's testimony (see fn. 3 above), but the question remains, did the confusion referred to relieve the petitioner of his refusal to take the test, after the officers, as found by the court on sufficient evidence, had advised him that his right to consult an attorney did not apply to the chemical test?[5]

### III

In *Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74 [81 Cal. Rptr. 348, 459 P.2d 900] (cert. den. 397 U.S. 989 [25 L.Ed.2d 396, 90 S.Ct. 1121]) the court stated: "A court should interpret legislation reasonably and should attempt to give effect to the apparent purpose of the statute. Our implied consent statute, including section 13353, was enacted to fulfill the need for a fair, efficient and accurate system of detection and prevention of drunken driving. (*People* v. *Sudduth,* 65 Cal.2d 543, 546 . . .; *Zidell* v. *Bright,* 264 Cal.App.2d 867. . . .) The immediate purpose of section 13353 is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. The long range purpose is, of course, to inhibit intoxicated persons from driving on the highways. [Citation.]" (1 Cal.3d at p. 77. See, in addition to the cases cited, *Quesada* v. *Orr* (1971) 14 Cal.App.3d 866, 869 [92 Cal. Rptr. 640]; *Hulshizer* v. *Department of Motor Vehicles* (1969) 1 Cal.App. 3d 807, 810-811 [82 Cal.Rptr. 330], Chantry, J., pro tem concurring; *Funke* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 449, 454 [81 Cal.Rptr. 662]; and *Bush* v. *Bright* (1968) 264 Cal.App.2d 788, 790 [71 Cal.Rptr. 123].)

■ "It is well settled that a person arrested for driving a motor vehicle while under the influence of intoxicating liquor has no constitutional right to consult an attorney before deciding whether he will submit to one of the three chemical tests specified in Vehicle Code section 13353. (*Ent* v. *Department of Motor Vehicles,* 265 Cal.App.2d 936, 938 . . .; *Fallis* v. *Department of Motor Vehicles,* 264 Cal.App.2d 373 . . .; *Finley* v. *Orr,* 262 Cal.App.2d 656, 663. . . .)" (*Smith* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 499, 504 [81 Cal.Rptr. 800]. See, in addition to cases cited, *Funke* v. *Department of Motor Vehicles, supra,* 1 Cal.App.3d 449, 453; *Plumb* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d

---

[5]The general finding that there is no substantial evidence to support the finding of the referee that petitioner refused to submit to any chemical test of his blood, breath or urine after being requested to do so by the officers, and that petitioner attempted to comply with the conflicting directions of the law enforcement officer and did not refuse to submit to any chemical test, and the court's conclusions of law and judgment, must stand or fall with the specific findings referred to above.

256, 259 [81 Cal.Rptr. 639]; *Lagomarsino* v. *Department of Motor Vehicles* (1969) 276 Cal.App.2d 517, 519 [81 Cal.Rptr. 193]; *Lacy* v. *Orr* (1969) 276 Cal.App.2d 198, 203 [81 Cal.Rptr. 276]; *West* v. *Department of Motor Vehicles* (1969) 275 Cal.App.2d 908, 910 [80 Cal.Rptr. 385]; *Walker* v. *Department of Motor Vehicles, supra,* 274 Cal.App.2d 793, 797; *Wethern* v. *Orr* (1969) 271 Cal.App.2d 813, 815 [76 Cal.Rptr. 807]; and *Reirdon* v. *Director of Dept. of Motor Vehicles* (1968) 266 Cal.App.2d 808, 810 [72 Cal.Rptr. 614].)

Unless the suspect is confused or misled as to his rights, a refusal to take the test because of the absence of counsel, or a consent to the test qualified by the requirement of the presence of counsel will be deemed an absolute refusal. (See *Smith* v. *Department of Motor Vehicles, supra,* 1 Cal.App. 3d 499, 503; *Funke* v. *Department of Motor Vehicles, supra,* 1 Cal.App.3d 449, 453; *Lagomarsino* v. *Department of Motor Vehicles, supra,* 276 Cal. App.2d 517, 519; *Lacy* v. *Orr, supra,* 276 Cal.App.2d 198, 203-204; *Pepin* v. *Department of Motor Vehicles* (1969) 275 Cal.App.2d 9, 10 [79 Cal.Rptr. 657]; *Walker* v. *Department of Motor Vehicles, supra,* 274 Cal. App.2d 793, 797; *Beales* v. *Dept. of Motor Vehicles* (1969) 271 Cal.App. 2d 594, 595-596 [76 Cal.Rptr. 662]; and *Reirdon* v. *Director of Dept. of Motor Vehicles, supra,* 266 Cal.App.2d 808, 810. Note also, *Kesler* v. *Department of Motor Vehicles, supra,* 1 Cal.3d 74, 77-78.)

On the other hand, ". . . if after a *Miranda* warning (particularly if it is overbroad and encompasses a right to counsel at more than interrogation) a suspect replies to a demand for a chemical test with a request for counsel, a trial court may fairly interpret that request as something other than a refusal unless the officer then informs the suspect that the *Miranda* warning is inapplicable to the test. (*Rust* v. *Department of Motor Vehicles,* 267 Cal.App.2d 545, 547 . . .; *Kingston* v. *Department of Motor Vehicles,* 271 Cal.App.2d 549, 554 . . ., demand for counsel 'misconceived' as an 'outright refusal'; *Walker* v. *Department of Motor Vehicles,* 274 Cal.App.2d 793, 799 . . ., 'If the evidence shows the officer made ambiguous or conflicting statements, that evidence has a bearing on whether . . . the response of the driver indicated his confusion rather than his refusal to perform a statutory duty'; *Lagomarsino* v. *Department of Motor Vehicles,* 276 Cal.App.2d 517. . . .)" (*Maxsted* v. *Department of Motor Vehicles* (1971) 14 Cal.App.3d 982, 986 [92 Cal.Rptr. 579]. See also *Rees* v. *Department of Motor Vehicles* (1970) 8 Cal.App.3d 746, 749 [87 Cal.Rptr. 456]; *Smith* v. *Department of Motor Vehicles, supra,* 1 Cal.App. 3d 499, 504; *Plumb* v. *Department of Motor Vehicles, supra,* 1 Cal.App. 3d 256, 259-260; *West* v. *Department of Motor Vehicles, supra,* 275 Cal. App.2d 908, 911; *Weber* v. *Orr, supra,* 274 Cal.App.2d 288, 291-292; *Farrington* v. *Dept. of Motor Vehicles* (1969) 272 Cal.App.2d 330, 335 [77

Cal.Rptr. 388]; and *Wethern* v. *Orr, supra,* 271 Cal.App.2d 813, 815. Cf. *People* v. *Ellis* (1966) 65 Cal.2d 529, 538-539 [55 Cal.Rptr. 385, 421 P.2d 393].)

In *Kesler* v. *Department of Motor Vehicles, supra, Rust* was interpreted as follows: "Nor does *Rust* v. *Department of Motor Vehicles,* 267 Cal. App.2d 545 . . ., improve respondent's position. In *Rust,* the arresting officer gave the driver an overly broad *Miranda* warning concerning his right to counsel, without explaining its inapplicability to the blood alcohol test. Since the driver may have been misled by the officer, the Court of Appeal held that the driver's insistence upon calling his attorney before the test was given did not constitute a refusal to submit to a test under section 13353. There is no indication in the record before us that respondent herein was similarly misled regarding his rights." (1 Cal.3d at p. 78. See also *Lacy* v. *Orr, supra,* 276 Cal.App.2d 198, 203; *Pepin* v. *Department of Motor Vehicles, supra,* 275 Cal.App.2d 9, 11; and *Walker* v. *Department of Motor Vehicles, supra,* 274 Cal.App.2d 793, 799-800.)

"A request for an attorney in the context of a *Miranda* warning can be construed as ambiguous rather than a refusal, thus presenting a factual issue for determination by the trial court." (*Maxsted* v. *Department of Motor Vehicles, supra,* 14 Cal.App.3d 982, 986. See also *Rees* v. *Department of Motor Vehicles, supra,* 8 Cal.App.3d 746, 749; *Plumb* v. *Department of Motor Vehicles, supra,* 1 Cal.App.3d 256, 261; *Walker* v. *Department of Motor Vehicles, supra,* 274 Cal.App.2d 793, 799; *Farrington* v. *Dept. of Motor Vehicles, supra,* 272 Cal.App.2d 330, 335; and *Kingston* v. *Dept. of Motor Vehicles* (1969) 271 Cal.App.2d 549, 554 [76 Cal.Rptr. 614]. But cf. *Wethern* v. *Orr, supra,* 271 Cal.App.2d 813, 816 where the writ was ordered to issue as a matter of law.)

In *Rees* v. *Department of Motor Vehicles, supra,* the court after examining the evidence concluded, "This testimony, the fact Rees was told when stopped by the officer he had a right to be represented by an attorney at that time, and the evidence of his drunken, confused and bewildered condition when arrested inferentially support the conclusion Rees' statement to the officer he would not take a test until he talked to his attorney was an exercise of a mistaken belief, attributable to the *Miranda* warning, he had a right to talk to his attorney before taking the test rather than a refusal to take the test. The finding Rees' 'refusal to take a test until he saw his lawyer did not constitute a refusal to take the test within the meaning of Vehicle Code Section 13353,' is supported by the foregoing inferences. Even though the evidence supports a contrary inference, the judgment must be sustained under the well-established rule that on appeal those inferences in support of

a finding will be accepted whereas those in support of a contrary conclusion will be rejected. [Citations.]" (8 Cal.App.3d at p. 751.)

In *Rees,* however, the findings under attack are referred to as follows: "The court found Rees was given a *Miranda* warning following his arrest, which included the statement 'he was entitled to be represented by an attorney *at this time* or at any other proceeding' (italics ours); when requested to take a test stated he would not take any test until he 'saw' his attorney; *was not advised by the arresting officer his right to an attorney did not extend to the testing procedure;* his 'refusal to take a test until he saw his lawyer did not constitute an unequivocal rejection of said test sufficient to excuse the police officer from supplying further information . . . informing him that the right of counsel did not extend to the testing procedures'; and his 'refusal to take a test until he saw his lawyer did not constitute a refusal to take the test within the meaning of Vehicle Code Section 13353.' " (*Id.,* at pp. 749-750, first italics in opinion, second italics added.)

 In this case, on the other hand, the court expressly found: "After the Section 13353 statement was read to petitioner a second time, and petitioner again stated that he wanted to talk to his lawyer, the arresting officers advised him that his right to consult an attorney did not apply to the chemical test request and that he would be permitted to contact his lawyer after he was booked, . . ."

 The duty of the officers if the suspect manifests confusion, is set forth in *Smith* v. *Department of Motor Vehicles, supra,* as follows: ". . . then it is incumbent upon the arresting officer to elaborate upon the warning. The arrested person should be explicitly informed that the constitutional rights previously explained to him are not applicable to the decision he must make concerning the three chemical tests, and that he has no right to consult an attorney before making the decision that he will, or will not, submit to one of them. (*Rust* v. *Department of Motor Vehicles,* [267] Cal. App.2d 545, 546 . . .; *Wethern* v. *Orr,* 271 Cal.App.2d 813, 815 . .; *West* v. *Department of Motor Vehicles,* 275 Cal.App.2d 908, 910. . . .)" (1 Cal.App.3d at p. 504. See, in addition to the cases cited, *Maxsted* v. *Department of Motor Vehicles, supra,* 14 Cal.App.3d 982, 986; *Plumb* v. *Department of Motor Vehicles, supra,* 1 Cal.App.3d 256, 261-262; and *Weber* v. *Orr, supra,* 274 Cal.App.2d 288, 291-292.)

In *Plumb* v. *Department of Motor Vehicles, supra,* the court stated, "We . . . think that the rationale of *Rust* should be explored a bit further. The rule only requires that the officer erase possible confusion caused the allegedly drunken laymen by the officer's own statements. . . . [¶] [I]t should be made *as clear as the accused's condition will permit* that he is NOT entitled

to have an attorney present. [¶] The truth of the statement in *Walker* that the value of the chemical tests rapidly diminishes with time cannot be disputed. Drivers arrested under section 23102 should not be encouraged in dilatory practices which would tend to nullify the purpose of the Implied Consent Law. To permit the driver to postpone the giving of any of the tests by summoning professional help or even seeking such advice would produce that result. The *Rust* rule does not involve any significant delay; it only furthers fairness." (1 Cal.App.3d at pp. 261-262, italics added.)

In *Reirdon* v. *Director of Dept. of Motor Vehicles, supra,* the suspect, who had previously been given a *Miranda* warning, was advised that it was not his right to have an attorney present with him in the jail at the time the test was being taken. The court concluded, "Consequently, petitioner was not justified in refusing to take the test until an attorney was present inasmuch as he was clearly and unequivocally told that he had no right to the presence of counsel at the time the test was being administered. Therefore, his contention of bewilderment is not persuasive in view of the fact that he refused the test after receiving an explicit advisement. (See *Finley* v. *Orr, supra,* 262 Cal.App.2d 656, 666-667.)" (266 Cal.App.2d at p. 811.)

The foregoing leave open the question of whether the suspect may assert his confusion or bewilderment despite such an express admonition. The court did find that after the express admonition the petitioner "remained confused because of both of the conflicting warnings and his partial intoxication. [¶] Petitioner then stated once again that he would not take a test until he could talk with his lawyer. Petitioner was then booked for a violation of Section 23102(a) of the Vehicle Code, and no chemical test was administered." In further elaboration the findings recite: "When he declined to submit to a chemical test until he could speak with his attorney, petitioner had been doing a substantial amount of drinking, and his ability to understand the difference between a Miranda warning and the admonition under Vehicle Code Section 13353 was impaired. He at no time intended to refuse compliance with legal requirements, as he understood them, and at no time intended to or did refuse to consent to tests within the conditions he understood the officer to have specified."

If the defendant remained confused because of the allegedly conflicting warnings, it was not because he was misled by the arresting officers. They performed their duty under the principles enunciated above. All of the cases in which the driver was exonerated by reason of confusion, point out, as in *Rees, supra,* that there was no attempt to explain that the right to an attorney did not extend to the testing procedure. The defendant's confusion

was therefore engendered by his failure to understand the final explanation and advice. Insofar as this lack of understanding was engendered by his partial intoxication it would not affect the finality and effectiveness of his refusal. Insofar as it was attributable to his normal state of intelligence, the court erred in not attributing it to that factor, rather than to the fact that the officers in the performance of their duties are required to give and, if confusion is manifest as it was found to be here, explain two admonitions.

■ "The determining factor is not the state of the suspect driver's mind, it is the fair meaning to be given his response to the demand that he submit to the chemical test." (*Maxsted* v. *Department of Motor Vehicles, supra,* 14 Cal.App.3d 982, 986.) There is no requirement "that a refusal of the test be 'intelligent' in order to trigger the sanction of suspension of the driver's license." (*Id.,* at p. 987.)

In *Hulshizer* v. *Department of Motor Vehicles, supra,* the court did "not reach the question of whether a self-reduction to a condition of incapability of refusal to be chemically tested by *voluntary* absorbtion of alcohol removes such a person from the provisions of section 13353 of the Vehicle Code." (1 Cal.App.3d 807, 809.) A concurring opinion suggests, ". . . it is only reasonable to conclude further that the Legislature intended that the choice be a meaningful one, made by a person capable of comprehension and of making a determination through reasoning and with an understanding of the results of his actions. It is about as sensible to ask an individual who has 'passed out' from an excess of alcoholic beverage to take one of the three tests in question as it would be to ask a dead man to do so." (*Id.,* at p. 811.) On the other hand, in *Smith* v. *Department of Motor Vehicles, supra,* the court observed, "It is settled that confusion resulting from being too drunk to understand admonishment is no defense." (1 Cal.App.3d at p. 505. See also *Fankhauser* v. *Orr* (1968) 268 Cal.App.2d 418, 421 [74 Cal.Rptr. 61]; and *Bush* v. *Bright, supra,* 264 Cal.App.2d 788, 791-793 [hg. den.]; and *August* v. *Department of Motor Vehicles* (1968) 264 Cal. App.2d 52, 67 [70 Cal.Rptr. 172].)

■ Here the findings of the court permit only one conclusion. The petitioner remained confused because he was unable to understand the advice "that his right to consult an attorney did not apply to the chemical test request." Whether this confusion was occasioned by lack of intelligence or his partial intoxication is immaterial. He was in no sense misled by the arresting officers. To permit the driver's subjective state to control his refusal when the distinction between the admonishments and the procedure involved have been explained to him, would nullify the statutory procedure and its sanctions.

The trial court's finding that there is no substantial evidence to support

the department's finding that petitioner refused to submit to any chemical test after being requested to do so by the officers is not sustained by the record. Moreover, the evidence fails to support the court's independent conclusion "that petitioner attempted to comply with the conflicting directions of the law enforcement officer and did not refuse to submit to any chemical test." The finding that the officers resolved any such conflict by their advice in connection with the second request for a test is sustained by the record and demonstrates that there were no conflicting instructions except in the impaired mind of petitioner.

The judgment is reversed with directions to the trial court to enter judgment denying the peremptory writ of mandate.

Molinari, P. J., and Elkington. J., concurred.