[Civ. No. 34965. First Dist., Div. Three. Mar. 3, 1975.]

JAMES WALTER McDONNELL, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

654

**COUNSEL**

Evelle J. Younger, Attorney General, and Gordon Zane, Deputy Attorney General, for Defendant and Appellant.

Noland, Hamerly, Etienne & Hoss, Brian Finegan and Stephen W. Pearson for Plaintiff and Respondent.

**OPINION**

**GOOD, J.***—This is an appeal by the Department of Motor Vehicles (DMV *post*) from a judgment that mandated DMV to set aside its decision suspending respondent McDonnell's driving license for six months pursuant to California Vehicle Code section 13353. The section creates an implied consent to a chemical test—blood, breath or urine—on the part of a driver suspected of driving under the influence of intoxicating liquor. The driver may choose which he prefers. He must be informed that his failure to submit to such test or to complete it will result in a six-month suspension of his driving privilege. He must also be advised that he does not have the right to have an attorney present before stating whether he will submit to a test or deciding which to take or during administration of the test. In the event of refusal, upon the officer's sworn statement that there was reasonable cause to believe that such person had been driving under the influence and had refused or failed to complete the test, DMV is required to suspend the driver's license, effective 10 days after written notice to the driver who may demand a hearing which must be held within 15 days after receipt of request therefor.

Respondent had attended a fund raising dinner for a pharmaceutical association. Before that he had taken two Actifed tablets to allay allergic symptoms he was suffering. At a cocktail hour, he had consumed "about" four scotches. A dinner of beef or steak, pasta and dessert was served at 10:30 p.m., during the course of which he drank "about" two glasses of wine. He then played cards. He testified that when he started to leave he felt funny, disoriented and confused. At 1:05 a.m. he was stopped en route home. Officer Pina had observed that his driving had been jerky and he was going across the center line of the highway. The officer could smell alcohol on his breath and noted slurred speech and bloodshot eyes. These observations and respondent's responses to routine field tests fully justified Pina's arrest of respondent and the invocation of the procedures of said section 13353. Pina had reasonable cause to believe respondent had been driving while drunk.

The officer read the standard form of admonition.[1] Respondent said

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]"You are required by State law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test, or fail to complete a test, your driving privilege will be suspended for a period of six months. You do not have the right to talk

he wanted an attorney. Pina read the form again and explained it. Respondent said he understood and agreed to take the breath test. The officers took him to the police station and on the way the standard *Miranda* warning was read to him. It was read only once. At the station when another officer had set up the breathalizer he refused to take the test unless an attorney was present. Explanation was again made and he was offered the other two tests but he persisted—no attorney—no test.

Some two years before his arrest, respondent, after jogging, became concerned that he may have had a small stroke or other vascular accident. He had a "little knowledge" of medical matters which, with a nod to Shakespeare, he said could be a dangerous thing. He consulted a physician and had a three-hour glucose tolerance test. He was told that he had a tendency to low blood sugar and should eat protein before exertion. He did not remember being told that attacks of hypoglycemia symptoms could be brought about by consumption of carbohydrates. The record contains no mention of hypoglycemia at that time. About a month before his arrest, there was an episode of distress after he had consumed numerous cups of coffee with sugar in each during a two-hour session with a colleague. He felt nervous, was trembling and his speech was affected. He stopped his car, went into a restaurant, had a light steak lunch and the episode passed. He decided he would no longer use sugar with coffee. He testified that he was not aware that the Actifed, drinks and dinner he'd had on the night in question could precipitate the attack he suffered.

A few days after his arrest he consulted a physician who gave him a five-hour glucose tolerance test. The doctor's diagnosis, confirmed by a consulting internist, was that respondent suffers from reactive hypoglycemia, i.e., an abnormally small concentration of glucose in the blood stream that, if triggered by the ingestion of carbohydrates—sugar or alcohol—produces flushing, sweating, dizziness, tremulousness, confusion, disorientation and, sometimes, stupor. The doctor said these symptoms closely parallel those of intoxication. To differentiate their cause would require a blood sugar test. The doctor also testified that the condition is extremely aggravated by the consumption of alcohol; that antihistamines (which Actifed contains) exacerbate the alcohol effect; that an attack could be triggered by an amount of alcohol insufficient to cause drunkenness; that a severe attack could be expected to occur in

to an attorney, or have an attorney present, before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen.'"

two and one-half to three hours after the ingestion of the drinks and dinner described by respondent and that judgment would be impaired during an attack.

The appeal presents the following issues:

1. *Is there evidence to support the finding that respondent refused to take any test because of officer-induced confusion?*

■ The trial court found that respondent initially agreed "to take a breath test and changed his mind because of confusion resulting from the officer's later advice that he had a right to have a lawyer present." DMV contends this finding has no support in the evidence. It is recognized that juxtaposition of the implied consent warnings (no right to refuse a test and no right to consult with or to have an attorney present during its administration) with the *Miranda* admonition (right to refuse interrogation and to have an attorney present at all stages of a police interrogation, etc.), is apt to induce confusion. If a driver who has been given *Miranda* insists on the presence of an attorney before choosing a test the courts have recognized that he may have been confused by the two warnings and the officer's failure to clarify and explain the difference. In such a case the refusal to take a test has been held not to be a refusal within the meaning of said section 13353. (*Rust* v. *Department of Motor Vehicles* (1968) 267 Cal.App.2d 545, 547 [73 Cal.Rptr. 366].) The question of officer-induced confusion is one of fact. (*Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 497 [94 Cal.Rptr. 182]; *Rees* v. *Department of Motor Vehicles* (1970) 8 Cal.App.3d 746, 749 [87 Cal.Rptr. 456]; *Lagomarsino* v. *Department of Motor Vehicles* (1969) 276 Cal.App.2d 517, 519 [81 Cal.Rptr. 193].) When a driver who has been given *Miranda* manifests confusion by asserting his alleged right to an attorney, it is incumbent upon the officer to explain that the right does not apply to these tests. (*Smith* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 499, 504 [81 Cal.Rptr. 800]; *West* v. *Department of Motor Vehicles* (1969) 275 Cal.App.2d 908, 910 [80 Cal.Rptr. 385].)

*Pepin* v. *Department of Motor Vehicles* (1969) 275 Cal.App.2d 9 [79 Cal.Rptr. 657], holds that mere insistence on an attorney because the driver wants to consult one about which test to take does not establish officer-induced confusion. Neither does being too drunk to understand the proffered information or explanations. (*Smith* v. *Department of Motor Vehicles, supra,* 1 Cal.App.3d 499 at p. 505.) Further *Goodman* v. *Orr* (1971) 19 Cal.App.3d 845, 857 [97 Cal.Rptr. 226], holds that lack of

understanding engendered by partial intoxication does not affect the finality and effectiveness of refusal. *Cahall* v. *Department of Motor Vehicles, supra,* 16 Cal.App.3d 491 at page 497 states, "In determining whether an arrestee's refusal is the result of confusion, the crucial factor is not the state of the arrestee's mind; it is the fair meaning to be given his response to the demand that he submit to the chemical test."

In the instant case, *Miranda* was read only once. There was no embellishment such as occurred in *Rust* v. *Department of Motor Vehicles, supra,* 267 Cal.App.2d 545 at page 546, where the officer told the driver that he had a right to an attorney "beginning at that moment;" or in *Plumb* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 256, 258 [81 Cal.Rptr. 639], where the officer said the driver had a " 'right to counsel . . . present at all stages of the proceedings' " or in other cases where an overly broad phrasing of *Miranda* is irreconcilable with the implied consent admonitions that are required to be given. But here, there is no inference whatsoever that any police action or statement remotely contributed to any confusion that may have existed in respondent's mind either at the scene of arrest or at the police station. Further, respondent testified that he refused testing because, in his confused state, he thought he would be convicting himself of a felony if he submitted. He pointed to nothing said by an officer that would engender this idea. The finding that respondent's refusal was the result of officer-induced confusion is thus unsupported by the evidence.

2. *Where a refusal is the result of confusion arising from a combination of a driver's physical condition and his use of alcohol, should the driver be exempted from the application of Vehicle Code section 13353?*

Refusals to take tests have never been excused in California on any ground other than officer-induced confusion reviewed above. Refusals contingent upon the presence of a private physician or attorney are no defense to license suspension. (*Beales* v. *Dept. of Motor Vehicles* (1969) 271 Cal.App.2d 594 [76 Cal.Rptr. 662]; *Reirdon* v. *Director of Dept. of Motor Vehicles* (1968) 266 Cal.App.2d 808, 810 [72 Cal.Rptr. 614]; *Fallis* v. *Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 373 [70 Cal.Rptr. 595].) Insistence on taking all three tests or none is a refusal within the section (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74 [81 Cal.Rptr. 348, 459 P.2d 900]), as is an unequivocal "no" based on the uncommunicated belief that an attorney is on the way. (*Maxsted* v. *Department of Motor Vehicles* (1971) 14 Cal.App.3d 982 [92 Cal.Rptr. 579].)

The trial court found that respondent was suffering from an involuntary and severe attack of reactive hypoglycemia which rendered him incapable of understanding the nature, purpose or effects of his acts or forming a rational response to the officer's requests that he submit to chemical testing pursuant to the code section in question. The medical testimony contains substantial evidence to support the finding except, however, the attack was involuntary only in the sense that respondent testified he did not know or have reason to expect that the alcohol he consumed, exacerbated by Actifed and a carbohydrate rich dinner, would bring about the attack.

Although we must reject respondent's stated contention that "confusion caused by the officer's instructions was enhanced by (respondent's) physical condition" because the officer's actions and statements had nothing to do with the refusal, the appeal has been briefed by both parties upon the basic issue as we have stated it. The crucial question becomes whether or not there is an impaired judgment defense to a license suspension under said section 13353.

The only authority advanced by respondent is the concurring opinion in *Hulshizer* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 807, 809-811 [82 Cal.Rptr. 330]. The concurring justice felt that in that appeal, the court should have discussed and overruled *Bush* v. *Bright* (1968) 264 Cal.App.2d 788 [71 Cal.Rptr. 123], which held that self-induced intoxication is not to be considered in determining whether a party is " 'otherwise in a condition rendering him incapable of refusal' " to submit to a chemical test.[2] The reasoning in the concurring opinion is that the language of said section 13353 is in terms of choosing so that it implies a meaningful choice, one "made by a person capable of comprehension and of making a determination through reasoning and with an understanding of the results of his actions." (*Id.*, at p. 811.) In this context "meaningful" is synonymous with "intelligent."

Subsequent history of the *Hulshizer* concurring dictum is of interest. It did not destroy the authority of *Bush* v. *Bright, supra,* 264 Cal.App.2d 788, which has since been cited with approval in *Goodman* v. *Orr, supra,* 19 Cal.App.3d 845 at page 857 and *Fankhauser* v. *Orr* (1968) 268

---

[2]The last paragraph of subdivision (a) of said section 13353 is, "Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent and such tests may be administered whether or not such person is told that his failure to submit to or complete the test will result in the suspension of his privilege to operate a motor vehicle."

Cal.App.2d 418, 421 [74 Cal.Rptr. 61] and by Arizona and Ohio courts.[3] There is no case authority to support an impaired judgment defense.

*Goodman* v. *Orr, supra,* 19 Cal.App.3d 845, specifically holds that a refusal need not be intelligent, as does *Maxsted* v. *Department of Motor Vehicles, supra,* 14 Cal.App.3d 982 at page 986, which further held that the determining factor as to whether a test has been refused "is not the state of the suspect driver's mind" but "the fair meaning to be given his response to the demand that he submit to the chemical test." The *Goodman* quotation of the *Hulshizer* dictum is not an approval thereof, because the court immediately continues, "On the other hand . . . '[i]t is settled that confusion resulting from being too drunk to understand admonishment is no defense.' " (*Goodman* v. *Orr, supra,* 19 Cal.App.3d 845 at p. 857, citing *Smith* v. *Department of Motor Vehicles, supra,* 1 Cal.App.3d 499 at page 505, and other cases—thus rejecting the rule proposed by the concurrence.)

In *Fankhauser* v. *Orr, supra,* 268 Cal.App.2d 418, the problem confronting us was almost reached. There DMV had suspended the license of a driver who had testified he could not remember either the officer's reading him the admonitions required by the law or his refusing to take the tests; that he'd had only five or six beers before his apprehension but suffered from flu for four or five days immediately preceding and had been unable to eat during that period. The driver's testimony and the officer's affidavit that initiated the hearing were the only evidence before the department. The superior court mandated the setting aside of the suspension, holding that the driver was in a condition rendering him incapable of refusing a test. The appellate court reversed but did not discuss the illness aspect of the problem.

This case is one of first impression in California as to whether or not the fact that a driver did not know he was abnormally susceptible to the effects of alcohol should excuse a refusal made when his judgment has

---

[3]*Campbell* v. *Superior Court* (1971) 106 Ariz. 542 [479 P.2d 685, 692] states, "This language [Arizona's similar statute] does not give a person a 'right' to refuse . . . the test . . . . We agree with . . . Bush v. Bright . . . that the 'obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is "deemed to have given his consent" is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates.' " *Bush* is also cited with approval by the Ohio Supreme Court in *Hoban* v. *Rice* (1971) 25 Ohio St.2d 111 [54 Ohio Ops.2d 254, 267 N.E.2d 311], as authority for the propositions that it is not necessary that the driver know or understand the consequences of his refusal and that if a subjective standard (licensee's state of mind) rather than an objective one were to determine whether the licensee had refused to submit to testing, an impossible burden would be placed upon an arresting officer.

been impaired because of the unexpected results of the use of alcohol. For the following reasons we are of the opinion that an illness that is triggered by alcohol consumption and produces the symptoms of intoxication is not a defense to suspension where the arresting officer has reasonable cause to believe that a driver is intoxicated.

The legislative history of the implied consent statute and cases heretofore discussed indicate that the statute is remedial in nature and aimed at reducing the hazards of drunken driving on the highways of California. It was designed to secure the *civil* cooperation of all persons privileged to drive in providing objective scientific evidence of intoxication (or sobriety) when the privilege is being exercised. The sanction of suspension when such cooperation is refused is not a criminal penalty and does not depend upon a subsequent conviction of driving while under the influence. Hearings under the statute are civil and not criminal in nature. (*Funke v. Department of Motor Vehicles* (1969) 1 Cal.App.3d 449, 454-455 [81 Cal.Rptr. 662].) The test is as much for the benefit of a driver who is not under the influence as it is to the state when the driver is intoxicated. It was also intended to obviate incidents of violence that may be expected when a recalcitrant inebriate is tested by force as under proper circumstances the police have a right to do.[4]

In other jurisdictions having similar statutes it has been held that there is no requirement to prove specific intent as to such refusal. (*Garcia v. Department of Motor Vehicles* (1969) 253 Ore. 505 [456 P.2d 85, 88]; cf. *Perryman v. State of Florida* (Fla.App. 1971) 242 So.2d 762; *State, Department of Highways v. Normandin* (1969) 284 Minn. 24 [169 N.W.2d 222].) The rules of *Maxsted* and *Goodman* (refusal need not be intelligent; objective rather than subjective factors control) could not be reconciled with a conclusion contrary to that of the Oregon court in *Garcia.* Being civil in nature, mens rea concepts of the criminal law are not applicable to proceedings under the statute unless the Legislature sees fit to amend the statute in some manner such as by adding "willful and knowing" to the word "refusal" therein. There is a presumption that the rule of *Maxsted* and *Goodman* were brought to the Legislature's attention. (*Meyer v. Board of Trustees* (1961) 195 Cal.App.2d 420, 431-432 [15 Cal.Rptr. 717].) It could easily have amended the section if it intended to create the exception or excuse respondent here advances. A

---

[4]In addition to the risk that excessive force might render involuntary test results inadmissible (cf. *People v. Kraft* (1970) 3 Cal.App.3d 890 [84 Cal.Rptr. 280]), there is always the grave risk of damage suits if personal injury results to a driver. Whether or not an action would be successful, the governmental agency would be put to the expense of defense.

court should not read into a remedial statute an exception that would impose obstacles to the achievements of its purposes. (*Mokelumne Hill Canal Co.* v. *Woodbury* (1859) 14 Cal. 265, 266; *California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 698 [74 Cal.Rptr. 313].)

■ The conduct that triggers suspension of a license is the refusal of any person to submit to a chemical test upon the request of an officer who has reasonable cause to believe that the subject has been driving while drunk. ■ Reasonable cause existed on the night in question. Alcohol was present on respondent's breath. His manner of driving made him as much a menace on the highway as if he had been drunk. His drinking was entirely voluntary. He refused any test. Nothing the police did (except their lawful request) contributed to his refusal or to any confusion that existed in his mind which may have impaired his judgment. Because alcohol was a factor, the officers had a right and were under a duty to invoke the procedures of section 13353.

In these circumstances, impaired judgment should not be a defense. An impossible burden would be placed upon law enforcement if an officer had to eliminate medical or physiological conditions of a suspect driver with alcohol on his breath as a cause for erratic driving before proceeding with the case. Our ruling makes it unnecessary to decide if an unexpected seizure unrelated to alcohol would excuse a refusal. There is merit to appellant's argument that an abandonment of the objective standards tests would seriously impair attainment of the objectives of said section 13353. The circumstances of the case do not involve considerations that might arise if an unexpected seizure of hypoglycemia or other illness entirely unrelated to alcohol occurs when a person is already driving.

The judgment is reversed with direction to enter judgment denying the petition for writ of mandate.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied April 2, 1975, and respondent's petition for a hearing by the Supreme Court was denied May 22, 1975. Tobriner, J., was of the opinion that the petition should be granted.