[Nos. D030834, D031518. Fourth Dist., Div. One. July 13, 1999.]

IRENE GREGORY, Plaintiff and Respondent, v.
STATE BOARD OF CONTROL, Defendant and Appellant.

COUNSEL

Daniel E. Lungren and Bill Lockyer, Attorneys General, Martin H. Milas, Assistant Attorney General, Silvia M. Diaz and Dana T. Cartozian, Deputy Attorneys General, for Defendant and Appellant.

Gray, Cary, Ware & Freidenrich, Kathryn E. Karcher, Mary A. Lehman and Michael J. Siegel for Plaintiff and Respondent.

OPINION

NARES, J.—The State Board of Control (the Board) appeals from a judgment (1) declaring it has a duty under the victims of crime restitution

program (Victims Program) (Gov. Code,[1] § 13959 et seq.) to obtain full crime reports from law enforcement agencies where victims do not do so, through its subpoena power if necessary, and (2) ordering it to approve Irene Gregory's claims for reimbursement of expenses she incurred in conjunction with her son David's killing.[2] The Board also appeals from a postjudgment order assessing attorney fees against it under Code of Civil Procedure section 1021.5. We modify the judgment to correct the rate of interest on costs and attorney fees, but affirm it in all other respects.

### FACTUAL AND PROCEDURAL BACKGROUND

David, 18 years of age, was shot to death on June 25, 1991. Reynaldo Parson was arrested and charged with the murder; he later pleaded guilty to manslaughter and was sentenced to 10 years in prison.

Irene incurred more than $6,000 in burial expenses for David and about $1,400 in counseling costs for herself. She filed claims for reimbursement of her expenses with the Board under the Victims Program.[3] The Board may deny the claim of a "derivative victim" such as Irene, upon a finding of the victim's "involvement in the events leading to the crime." (§§ 13960, subd. (a)(2)(A), 13964, subd. (b).)

The San Diego Police Department (the Department) provided the Board with the first two pages of its "Crime/Incident Report." They revealed that Parson "was arrested for murder after shooting to death David Gregory in the parking lot east of 5426 Bay View Hts. Pl." Because the Board could not determine whether David's conduct contributed to his death, it sent the Department its one-page "Crime Report Clarification Request," or "in-lieu" form. The in-lieu form contains the question, "Did victim's actions contribute to or lead up to the cause of his/her injuries/death?" If the "yes" box is checked, a brief explanation is requested.

On May 1, 1992, the Department completed the in-lieu form. It checked the "yes" box indicating David's conduct contributed to his death. In explanation, it stated: "The victim initiated the contact with the suspect. The victim and his companions chased the suspect and confronted him to assault him." Based thereon, the Board's staff recommended denial of Irene's claims.

In January 1993 Irene's counsel, Judith Rowland, wrote the Board requesting a copy of the police report. Rowland argued Irene "cannot be

---

[1]Statutory references are to the Government Code except where specified otherwise.

[2]To avoid confusion, we refer to the Gregorys by their first names.

[3]Because the Victims Program capped reimbursement for burial expenses at $3,500, Irene's claims totaled approximately $4,900. (§ 13965, subd. (a)(1)(B) and (a)(6).)

denied compensation absent the release to her attorney of a report upon which the recommendation of denial is based." In March 1993 Rowland requested a hearing on Irene's claims. She wrote, "a fair hearing will be possible only with access to a complete police/crime report." Rowland requested that the Board "subpoena the complete law enforcement agency file[.]" She also requested that the Board subpoena Officer L.C. Moran, who wrote the police report, and any other officers who "interviewed and/or wrote reports in this case."

The Department provided the Board with another in-lieu form, this one completed on February 16, 1993. The "yes" box was again checked regarding whether David's conduct contributed to his death. The explanation given was as follows: "V[ictim] was challenging s[uspect] to continue an earlier fight. Fight was over a girlfriend and v[ictim] drove to s[ubject's] location with several gang members to beat suspect." The two in-lieu reports were completed by different officers, neither of whom filled out the original police report.

In a June 1996 letter, the Board informed Rowland that staff again recommended the denial of Irene's claims. In response, Rowland protested that the recommendation was based "only [on] an 'in-lieu form' with virtually no factual information—only conclusions[.] Please make a copy of the police report available to counsel before [the] hearing is set."

In December 1996 Irene's new counsel, Michael Siegel, wrote to the Board insisting that it subpoena "a complete copy of the crime report." He explained, "[a]lthough we have received a copy of the two-page Report . . . and two 'in-Lieu' responses . . . (from two different police officers, neither of whom was apparently involved in the investigation), there is insufficient information about the bases for some of their statements or conclusions."

In response, a Board claims specialist telephoned Sergeant Holmes of the Department, requesting a copy of the complete crime report. He told her it was the Department's "practice not to release homicide reports to ensure the protection of the witnesses."

On January 30, 1997, the Board held a hearing on Irene's claims. Detective David Penalosa stated he was one of four detectives assigned to David's case. He did not, however, prepare the original crime report or the in-lieu reports, and he provided no information regarding his specific involvement in the investigation. In Detective Penalosa's opinion, David's conduct "contributed to his demise."

Irene argued she could not adequately respond to staff's recommended denial without a copy of the complete police report. She also argued the

in-lieu reports "are no more than opinions based on questionable and un-sworn statements," and "there is no legitimate evidence that David contributed to his death."

The Board explained its policy was to request full crime reports, but "it's not the role of the Board . . . to direct police departments which records they should release . . . and which records they're not going to release." The Board asserted that if a claimant believed a police department improperly refused to provide records, he or she "should take a writ against the police department to collect those records." The Board denied Irene's claims.

Irene then filed a petition for writ of mandate (Code Civ. Proc., § 1094.5) and complaint for declaratory relief. She asserted the Board should be ordered to pay her claims because it "failed to obtain the crime report as . . . required by law and because [its] decision is not supported by substantial evidence."

After a January 30, 1998, hearing, the trial court declared the Board has a mandatory legal duty to obtain crime reports from law enforcement agencies, and where they are not informally provided, it must use its subpoena power. The court also determined the Board's denial of Irene's claims lacked evidentiary support. It ordered that a peremptory writ of administrative mandate issue requiring the Board to approve Irene's claims without any further hearing.

The court later heard Irene's motion for attorney fees under Code of Civil Procedure section 1021.5. The trial court awarded her $35,422 after finding her litigation vindicated an important right affecting the public.

## DISCUSSION

### I. *Collateral Estoppel*

Preliminarily, we dispose of the Board's argument Irene was collaterally estopped from litigating the issue of whether it has a duty to obtain complete crime reports. It claims that in an earlier writ proceeding, another judge of the superior court found against her on the issue.

"The doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy. It seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*." (7 Witkin,

Cal. Procedure (4th ed. 1997) Judgment, § 280, p. 820.) Under the collateral estoppel aspect of res judicata, relitigation of an issue previously adjudicated is generally precluded if certain criteria are met: "(1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit. [Citation.]" (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 [226 Cal.Rptr. 558, 718 P.2d 920]; *Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].)

 The threshold requirements are not met here. Before the Board held its hearing, Irene filed an earlier petition for writ of mandate, arguing the Board had a ministerial duty to provide her with a complete copy of the crime report. In opposition, the Board assured the trial court that crime reports "are always made available to the claimant . . . if the Board has them, and at the very latest, at the hearing [citation]. Here, the hearing has yet to be held, so petitioner clearly has adequate time to review the crime reports [and] evaluate them[.]"

At oral argument, the following exchange took place: "Ms. Rowland: I don't have the police report. I have no idea what the actual police report says in this case because I've never seen it, and I have no right to see it—

"The Court: Right.

"Ms. Rowland: —Until the hearing.

"The Court: Right. And at the hearing, you get it. If you need a continuance, it's granted."

The court denied the petition, finding the Board had "no ministerial duty *presently unperformed.*" (Italics added.) Irene appealed the court's ruling, but "dismissed it because it was premature to raise the issue since the . . . Board's hearing on [her] claims had not yet occurred." Contrary to the Board's view, the issue of whether it is duty-bound to subpoena crime reports was not fully litigated or necessarily decided in the earlier writ proceeding. Collateral estoppel principles are thus inapplicable.

## II. *Victims Program*

### A

 Section 13968, subdivision (d) provides that "[n]otwithstanding . . . any other provision of law, every law enforcement . . . agency in the

state shall provide to the board . . . , upon request, . . . a complete copy of the report regarding the incident and any supplemental reports involving the crime, . . . for the specific purpose" of determining a claimant's right to reimbursement under the Victims Program.[4] "The law enforcement agency supplying the information may, at its discretion, withhold the names of witnesses or informants from the [B]oard, if the release of such names would be detrimental to the parties or to an investigation currently in progress." (§ 13968, subd. (e).)

The Board's regulation provides: "In order to expedite the processing of the regular application, applicants shall be encouraged to obtain and submit, along with the regular application, a copy of the crime report as prepared by the law enforcement agency to which the crime was reported. In cases in which the applicant or his or her representative are unable or decline to obtain such crime report, [the Board] or qualifying victim witness centers under contract to the board *shall obtain the crime report. No regular application shall be deemed complete until [the Board] or its contract agencies have received a copy of the crime report.*" (Cal. Code Regs., tit. 2, § 649.9, subd. (c), italics added.) However, the regulation also states: "In cases in which the law enforcement agency deems it advisable to withhold a copy of the crime report from public disclosure in order to assure the security of innocent parties or the integrity of on-going criminal investigations, such agency may substitute a report that provides the facts of the crime, [and] whether the victim contributed to the crime or the events leading to the crime[.]" (*Ibid.*) Irene contends, and the trial court agreed, that the portion of the regulation allowing a summary report in lieu of the original crime report is void because it conflicts with section 13968, subdivision (d).

## B

The interpretation of statutes, as well as administrative regulations, presents questions of law subject to independent review on appeal. (*Delta Air Lines, Inc.* v. *State Bd. of Equalization* (1989) 214 Cal.App.3d 518, 525 [262 Cal.Rptr. 803]; *Board of Retirement* v. *Lewis* (1990) 217 Cal.App.3d 956, 964 [266 Cal.Rptr. 225].) ▮ "In matters of statutory construction our fundamental concern is legislative intent. [Citation.] In order to determine intent, we begin with the language of the statute itself. [Citation.] If the language is clear, there is no need to resort to other indicia of intent; there is no need for construction. [Citation.]" (*Graham* v. *State Bd. of Control* (1995) 33 Cal.App.4th 253, 259-260 [39 Cal.Rptr.2d 146].)

---

[4]Subdivision (d) of section 13968 further provides: "Any information received pursuant to this section shall be received in confidence for the limited purpose for which it was provided and shall not be further disseminated. A violation of this subdivision is a misdemeanor punishable by a fine not to exceed five hundred dollars[.]"

█ The Board's rulemaking authority is limited by section 11342.2, which provides: "[N]o regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." █ "Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations. [Citations.]" (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Benton* v. *Board of Supervisors* (1991) 226 Cal.App.3d 1467, 1479 [277 Cal.Rptr. 481].)

█ We conclude the Board's regulation is void insofar as it gives law enforcement agencies the discretion to submit summary reports in lieu of full crime reports. (Cal. Code Regs., tit. 2, § 649.9, subd. (c).) Section 13968 unambiguously requires law enforcement agencies to provide the Board with complete copies of crime reports, subject only to the agencies' discretion to redact witness information if releasing it would be detrimental to the parties or to an ongoing investigation.[5] (§ 13968, subds. (d) and (e).)

We reject the notion summary reports comply with the statute because law enforcement agencies should be presumed to include in them "all properly disclosable facts relevant to the crime at issue."[6] If a substitute report must include all discoverable facts relating to the crime, no legitimate reason exists for refusing to produce the full report. Further, summaries are an inadequate substitute because, as here, they may be completed long after the crime, and by officers or personnel uninvolved with the initial investigation. Moreover, the Board's one-page in-lieu form allows for only the most cursory of reports. In any event, the nature of summary reports is immaterial because section 13968 explicitly requires submission of full crime reports.

## C

As the Board points out, a literal reading of subdivision (e) of section 13968 would prohibit law enforcement agencies from redacting any information from crime reports other than the names of witnesses. We agree that such a construction thwarts the Legislature's intent to protect witnesses. For instance, the redaction of a witness's name would lack protective value if his or her address, or other specifically identifying information, appeared in the report.

---

[5]The evidence in this case included a 1987 Information Bulletin disseminated by the Office of the Attorney General to "All California Law Enforcement Agencies." It advised that where a claim for restitution is made under the Victims Program, "the law enforcement agency must provide complete copies of any reports . . . as required by . . . Section 13968(d) . . . ."

[6]The Board relies upon Evidence Code section 664, which provides in part, "It is presumed that official duty has been regularly performed."

██ "Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished." (*Home Depot, U.S.A., Inc.* v. *Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1601 [49 Cal.Rptr.2d 302].) "Literal construction of statutory language will not prevail if contrary to the legislative intent apparent in the statutory scheme. [Citation.] Statutory language should not be given a literal meaning that results in absurd and unintended consequences. [Citations.]" (*Gomes* v. *County of Mendocino* (1995) 37 Cal.App.4th 977, 986 [44 Cal.Rptr.2d 93].) ██ Accordingly, we interpret subdivision (e) of section 13968 to allow the discretionary redaction of not only witnesses' names, but other identifying information, where necessary to protect the witnesses or facilitate ongoing investigations.

D

The question remains whether a law enforcement agency's unlawful refusal to produce the full crime report triggers a duty of the Board to subpoena it. (§ 13910 [Board has statewide subpoena power].) We conclude it does. "A duty is ministerial when it is the doing of a thing unqualifiedly required. [Citation.]" (*Redwood Coast Watersheds Alliance* v. *State Bd. of Forestry & Fire Protection* (1999) 70 Cal.App.4th 962, 970 [83 Cal.Rptr.2d 24].) A public entity has a ministerial duty to comply with its own rules and regulations where they are valid and unambiguous. (*Pozar* v. *Department of Transportation* (1983) 145 Cal.App.3d 269, 271 [193 Cal.Rptr. 202].) Again, the Board's regulation, which has "the force and effect of law" (*Graham* v. *State Bd. of Control, supra,* 33 Cal.App.4th at p. 258), unambiguously requires it to obtain the crime report when the claimant cannot or does not do so.

The Board's acceptance of responsibility for obtaining crime reports is sound. An individual claimant is only entitled to compensation for out-of-pocket expenses (§ 13965), and thus lacks incentive to wage costly litigation against a noncompliant law enforcement agency. Moreover, as discussed below, the Board is burdened with proving the crime victim contributed to his or her injuries or death, and thus the onus is rightly on it to obtain the full reports.

In sum, we agree with the trial court's declaration that the Board "has a mandatory legal duty to obtain crime reports from law enforcement agencies, including the . . . Department, when applicants such as [Irene] cannot or do not obtain a copy of the crime report; and [¶] . . . [i]f a law enforcement agency refuses to provide the crime report upon request by [the] Board, the

. . . Board's mandatory legal duty requires it to subpoena the crime report from the law enforcement agency."[7]

### III. *Insufficiency of the Evidence*

 The Board contends the trial court erred by finding its ruling lacks evidentiary support. Irene counters that the Board's ruling was impermissibly based upon incompetent evidence.

A claimant under the Victims Program has "the burden of establishing by a preponderance of the evidence that, as a direct result of a crime, the victim or derivative victim incurred an injury that resulted in a pecuniary loss." (§ 13963, subd. (c).) Once a derivative victim establishes a prima facie right to benefits, the burden shifts to the Board to prove the victim's contribution to his or her injuries or death justifies nonpayment. (*Graham* v. *State Bd. of Control, supra,* 33 Cal.App.4th 253, 260; §§ 13960, subd. (a)(2)(A), 13964, subd. (b).)

 It is undisputed that the burden shifted to the Board to prove David's conduct contributed to his death. It relied primarily upon the two in-lieu reports provided by the Department. The forms were prepared 11 and 20 months, respectively, after David's death; neither form was completed by the officer preparing the initial police report, and neither form suggests the officer completing it was involved in the investigation of David's killing.

Hearsay "is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Hearsay is admissible in an administrative hearing if it is relevant and "the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs[.]" (§ 13963, subd. (d); *Funke* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 449, 456 [81 Cal.Rptr. 662].)

The Department's in-lieu reports contain multiple hearsay, and they do not come within the business records exception to the hearsay rule. "[E]vidence is admissible under [Evidence Code] section 1280 if: (a) the writing was made by and within the scope of duty of a public employee; (b) the writing was made at or near the time of the event, and; (c) the sources of information

---

[7]We reject the Board's argument that Irene's declaratory relief action was improper. It asserts she only sought to compel the release of the names of witnesses to David's murder, and since subdivision (e) of section 13968 allowed the Department to redact that information, there was no "actual controversy." (Code Civ. Proc., § 1060.) The record shows Irene consistently sought the entire police report in order to respond to staff's recommended denial of her claims.

and the method and time of its preparation were such as to indicate its trustworthiness." (*McNary* v. *Department of Motor Vehicles* (1996) 45 Cal.App.4th 688, 695 [53 Cal.Rptr.2d 55].) Even assuming other criteria were met here, the in-lieu reports were not "made at or near the time of the . . . event." Because Irene did not object to their admissibility, however, we need not consider whether the reports are "the sort of evidence upon which responsible persons are accustomed to rely[.]" (§ 13963, subd. (d).)

The admissibility and substantiality of hearsay evidence are different issues. Even if admissible, hearsay evidence alone "is insufficient to satisfy the requirement of due process of law, and mere uncorroborated hearsay does not constitute substantial evidence. [Citation.]" (*Dyer* v. *Watson* (1953) 121 Cal.App.2d 84, 92 [262 P.2d 873]; *Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573, 583 [103 Cal.Rptr. 306], citing *Consolidated Edison Co.* v. *National Labor Relations Bd.* (1938) 305 U.S. 197, 229-230 [59 S.Ct. 206, 216-217, 83 L.Ed. 126]; *Kinney* v. *Sac. etc. Retirement System* (1947) 77 Cal.App.2d 779, 782 [176 P.2d 775].)

Considered alone, the Department's hearsay reports are insufficient evidence of David's culpability. The Board, however, also relied upon Detective Penalosa of the Department. The following exchange took place between him and Board member Richard Chivaro:

"MR. CHIVARO: . . . Are you personally familiar with this case?

"MR. PENALOSA: Yes, sir. . . . I'm one of four detectives . . . assigned to this case the day that it occurred.

" . . . . . . . . . . . . . . . . . . . . . . . . .

"MR. CHIVARO: . . . [B]ased on your knowledge [do] you have any reason to believe that Mr. Gregory was not a participant in . . . the events leading up to this crime?

" . . . . . . . . . . . . . . . . . . . . . . . . .

"MR. PENALOSA: On the contrary.

"MR. CHIVARO: You believe he was.

"MR. PENALOSA: Yes. I believe Mr. Gregory contributed to his demise. Yes."

Detective Penalosa gave no information regarding the nature of his involvement in the investigation into David's death, or of the basis for his conclusion.

" '[I]f the word "substantial" means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' [Citations.]" (*Beck Development Co.* v. *Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203-1204 [52 Cal.Rptr.2d 518].)

Detective Penalosa's opinion was conclusory and not supported by any facts, and thus it was not corroborative of the in-lieu reports. The Board's evidence of David's culpability in his death was insufficient as a matter of law. We reject its argument the matter should be remanded to it for another hearing after its subpoena of the full crime report. It had the opportunity to subpoena the report earlier in an effort to meet its burden of proof, but refused to do so. The Board simply adduced no evidence to support a denial of Irene's claims and the trial court properly ordered it to approve and pay them without further proceedings.

### IV. *Private Attorney General Fees*

Finally, the Board complains of the court's award of attorney fees to Irene. "Code of Civil Procedure section 1021.5, which is a codification of the 'private attorney general doctrine,' authorizes a court to award attorney fees to a 'successful party' when: ' "(1) the action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement make the award appropriate." ' [Citations.] 'The fundamental objective of the private attorney general theory is to encourage suits effecting a strong public policy by awarding substantial attorney fees to those whose successful efforts obtain benefits for a broad class of citizens.' [Citation.]" (*County of San Diego* v. *Lamb* (1998) 63 Cal.App.4th 845, 852 [73 Cal.Rptr.2d 912].)

The award of private attorney general fees is within the trial court's sound discretion. (*San Bernardino Valley Audubon Society, Inc.* v. *County of San Bernardino* (1984) 155 Cal.App.3d 738, 754 [202 Cal.Rptr. 423].) "Thus, the award will be reversed only if it is clearly wrong or has no reasonable basis." (*Ibid.*)

We cannot say there was any abuse of discretion here. Irene was unquestionably the "successful party," as she obtained the declaratory and writ relief she sought. Further, Irene's action conferred a significant benefit

on the general public. She produced undisputed evidence the Board had a long-standing blanket practice of shirking its duty to subpoena full crime reports from law enforcement agencies refusing to voluntarily comply with section 13968, subdivision (d), and it was "the practice and policy of the [Board's] staff to recommend denial of a victim's application for assistance if no crime report is submitted to, or obtained by . . . staff."

In enacting the Victims Program, the Legislature declared, "[i]t is in the public interest to assist residents of the State of California in obtaining restitution for the pecuniary losses they suffer as a direct result of criminal acts." (§ 13959.) The benefit Irene's action conferred is the proper interpretation of Victims Program provisions and related regulations and the Board's forced compliance with its mandatory duty to obtain full crime reports, by legal means if required. Contrary to the Board's view, the fact that law enforcement agencies retain discretion to redact witness information under certain circumstances does not diminish the efficacy of this litigation.

Additionally, the " 'necessity and financial burden of private enforcement make the award appropriate[.]' [Citation.]" (*County of San Diego* v. *Lamb, supra,* 63 Cal.App.4th at p. 853.) The cost to ·an individual claimant of forcing the Board to perform its mandatory duty is prohibitive because it far outweighs any reimbursement which may ultimately be obtained. This case, in which Irene's attorney fees were approximately seven times the amount of reimbursable expenses, aptly demonstrates the point.[8]

## V. *Interest*

The judgment includes interest on costs and attorney fees at a rate of 10 percent per year. The parties agree that because the Board is a public agency of the state, the correct rate of interest is 7 percent per year. (Cal. Const., art. XV, § 1; *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 348 [45 Cal.Rptr.2d 279, 902 P.2d 297].) We modify the judgment accordingly.

---

[8]We reject the Board's argument Irene's motion for attorney fees was premature because this appeal was pending. The cases it relies upon merely hold that a request for fees under Code of Civil Procedure section 1021.5 is not barred if brought after disposition of an appeal, as opposed to being included in the posttrial cost memorandum. (*Angelheart* v. *City of Burbank* (1991) 232 Cal.App.3d 460, 466 [285 Cal.Rptr. 463]; *Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 226-227 [226 Cal.Rptr. 265]; *Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829, 834 [160 Cal.Rptr. 465].) Trial courts commonly hear motions under Code of Civil Procedure section 1021.5 before the judgment is final. (See *Beasley* v. *Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1412-1413 [1 Cal.Rptr.2d 459]; *Phipps* v. *Saddleback Valley Unified School Dist.* (1988) 204 Cal.App.3d 1110, 1117 [251 Cal.Rptr. 720]; *Kern River Public Access Com.* v. *City of Bakersfield* (1985) 170 Cal.App.3d 1205, 1213-1214 [217 Cal.Rptr. 125].)

## DISPOSITION

Paragraph three of the judgment is modified to impose interest of 7 percent per year on the Board. In all other respects, the judgment is affirmed. The Board is to pay Irene's costs of appeal.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied July 27, 1999.