Filed 8/31/16

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| HARALD MARK GALZINSKI,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>SAMUEL D. SOMERS, as Chief of Police, etc.,<br><br>    Defendant and Respondent;<br><br>PAM SEYFFERT et al.,<br><br>    Real Parties in Interest and<br>    Respondents. | C079513<br><br>(Super. Ct. No.<br>34201480001895CUWMGDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge.  Reversed.

Harald Mark Galzinski, in pro. per., for Plaintiff and Appellant.

James Sanchez, City Attorney; Katherine E. Underwood, Deputy City Attorney for Defendant and Respondent and Real Parties in Interest and Respondents.

In February 2011, plaintiff Harald Mark Galzinski submitted a citizen's complaint to the Sacramento Police Department (the department) against three of the department's officers related to the taking of biological samples from him following his arrest in December 2003.  In July 2014, the department's internal affairs division notified Galzinski that the division had "reviewed [his] complaint" but "no further action" would be taken on it because, "[b]ased upon the information [Galzinski] provided, the issues [he] raised pertain[ed] to points of law which should have been litigated during [his] criminal trial in 2005.  Therefore, the proper venue for resolving [his] complaint would be through the appeals process."

Galzinski sought a writ of mandate from the superior court to compel defendant Samuel D. Somers Jr., Chief of the Sacramento Police Department, and three sergeants in the department's internal affairs division (real parties in interest Pam Seyffert, Charles Husted, and Terrell Marshall)[1] to "properly investigate" his complaint and to "make official findings as to the validity of [his] allegations."  The superior court denied Galzinski's petition, concluding that the department had "essentially" found the officers Galzinski accused of misconduct were " 'exonerated' " and that, in any event, the department did not abuse its discretion "in responding to the complaint in the way that it did."

On Galzinski's appeal, we conclude the trial court erred in denying Galzinski's petition.  As we will explain, the procedure for addressing citizen complaints the department established and published obligated the department to conduct an investigation into the allegations of the complaint that was sufficient to allow the Chief of Police to make one of four possible findings, and the procedure obligated the Chief of Police to make one of those findings with respect to each of Galzinski's allegations of

---

[1]     For convenience, we will refer to defendant and the three real parties in interest jointly as defendants.

2

misconduct.  Defendants did not comply with these obligations, and Galzinski is entitled to a writ of mandate compelling defendants to perform their ministerial duty to satisfy the obligations imposed by the department's published procedure.  Accordingly, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

Subdivision (a)(1) of Penal Code section 832.5 provides that "[e]ach department or agency in this state that employs peace officers shall establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies, and shall make a written description of the procedure available to the public."  In compliance with this provision, the department has made available to the public a "Citizen Complaint procedure" brochure.  According to that brochure, once a citizen complaint has been submitted to the department, "it may be investigated in one of two ways.  It will either be forwarded to the employee's supervisor for inquiry or to the Internal Affairs Division for investigation."  The brochure further explains that "[e]ach allegation is examined on its own merits" and "[t]he Chief of Police will render a finding in each case.  There are four possible findings:

"Sustained:  The investigation disclosed enough evidence to clearly prove the allegation.

"Not sustained:  The investigation failed to reveal enough evidence to clearly prove or disprove the allegation.

"Exonerated:  The act which proved the basis for the complaint did occur; however investigation revealed the act was justified, lawful and proper.

"Unfounded:  The investigation has produced sufficient evidence to prove that the act or acts alleged did not occur.  This finding shall also apply when individual personnel named in the complaint were not involved in an act that did occur.

"You will be notified of the finding in writing at the conclusion of the investigation."

3

On February 8, 2011, Galzinski submitted a citizen's complaint to the department against three officers related to his arrest in December 2003. Specifically, Galzinski complained that on the day of his arrest two of the officers had a nurse at the Sacramento County Jail collect biological samples from him without a warrant or probable cause. He further complained that none of the reports completed by the three officers explained or confirmed "why, where, when, how, and by who the evidence was collected, and the reason this information was expressly left out of [the] reports." Finally, Galzinski complained that "[n]o receipt or documentation of the tests done [on the samples] and the results of such tests were []ever turned over to [him] at anytime."

In August 2011, following a request made by Galzinski (which appears to have been in the form of an ex parte motion), Sergeant Husted notified Galzinski that his complaint had been received on February 24, 2011, and assigned to Sergeant Seyffert.

On May 28, 2014 -- more than three years after the department received Galzinski's complaint -- Galzinski wrote to Sergeants Husted and Seyffert, asking for notice of the disposition of his complaint or notice of when the investigation of his complaint would be concluded. By letter dated July 3, 2014, Sergeant Marshall notified Galzinski that the internal affairs division had "reviewed [his] complaint" but "no further action" would be taken on it because, "[b]ased upon the information [Galzinski] provided, the issues [he] raised pertain[ed] to points of law which should have been litigated during [his] criminal trial in 2005. Therefore, the proper venue for resolving [his] complaint would be through the appeals process."[2]

---

[2] The letter also stated that Galzinski's complaint had been "placed in 'suspension' status pending the outcome of [his] criminal case," but then inexplicably acknowledged that Galzinski's "criminal case concluded on November 2, 2005, [when he was] found guilty and sentenced to prison" -- more than five years *before* Galzinski submitted his citizen's complaint to the department.

In July 2014, Galzinski filed a verified petition for a writ of mandate in the Sacramento County Superior Court against Police Chief Somers as respondent, and Seyffert, Husted, and Marshall as real parties in interest, seeking to compel them to "properly investigate [his] citizen's complaint . . . and/or make official findings as to the validity of [his] allegations." In opposing Galzinski's petition, defendants argued that the department had complied with its duty under Penal Code section 832.5 to establish a procedure for the investigation of citizen complaints and to make a written description of that procedure available to the public. Defendants further argued that Galzinski was improperly seeking to control the Internal Affairs Division's discretion to decide what action to take in response to his complaint. In reply, Galzinski argued that defendants had a ministerial duty to comply with the department's complaint procedure as described in the brochure made available to the public. More specifically, Galzinski argued that he was "not seeking to compel a particular finding," he was "merely seeking to compel a full and complete investigation of his factual allegations" and "a finding on these allegations made by the Chief of Police, as required by the [department's] own procedures."

At the hearing on Galzinski's petition, defense counsel "confirmed . . . that biological samples were collected from Galzinski without a warrant and test results were not provided to Galzinski." Nevertheless, counsel argued that "those acts were justified, lawful and/or proper" because no warrant was required, or, more precisely, because it was "unclear whether a warrant was required," and because, "assuming a duty to disclose the test results exist[ed], [that duty] belongs to the prosecuting attorney, not to the Department."

In their opposition to Galzinski's writ petition in the superior court, defendants asserted that Galzinski's complaint was placed in suspension until "all criminal appeals were exhausted," which, in their view, occurred in April 2014, when the United States Supreme Court denied Galzinski's petition for writ of certiorari.

5

In April 2015, the superior court denied Galzinski's petition. The court first agreed with defendants that Galzinski had not shown the failure to comply with any duty imposed by Penal Code section 832.5, because "[t]here is no suggestion that the Department either lacks the required procedure or failed to make a written description available to the public." Next, noting that Galzinski's "real complaint concerns the adequacy of the Department's response" to his complaint, the court concluded that "[i]n essence, Galzinski complains about the manner in which the Department exercised its discretion to handle his complaint," but "mandate will not lie to compel the Department to exercise its discretion in a particular manner." Finally, addressing the argument in Galzinski's reply (set forth above) that he was seeking to compel defendants to follow the department's published complaint procedure, the court "assume[d] for purposes of this petition that the Department was . . . required to follow its own complaint procedure" and concluded that what Galzinski was seeking was "a writ of mandate directing the Department to render one of the precise findings required by its own complaint procedure." The court concluded Galzinski was not entitled to that relief for two reasons. First, based on defense counsel's argument at the hearing that the actions taken by the department with respect to the collection and testing of Galzinski's biological samples were justified, lawful, and/or proper, the court concluded that "although the Department did not use the magic words, it essentially found the officers against whom the complaint was filed were 'exonerated.' " Second, the court concluded that because Galzinski's complaint "was unique because it involved issues that either were raised or that could have been raised in both the underlying criminal trial and the various legal actions Galzinski brought after the criminal trial concluded," his complaint "required a unique response rather than one of the four responses enumerated in the Department's complaint procedure," and thus the court could not "say that the Department abused its discretion in responding to the complaint in the way that it did."

6

In May 2015, the court entered its judgment denying Galzinski's writ petition. Galzinski timely appealed.

## DISCUSSION

On appeal, Galzinski contends the superior court improperly denied his writ petition because defendants had a ministerial duty to investigate his citizen's complaint and to render a finding on that complaint in compliance with the complaint procedure the department established and made public pursuant to subdivision (a)(1) of Penal Code section 832.5. In support of this argument, he cites *Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584 (*Gregory*) for the proposition that " '[a] public entity has a ministerial duty to comply with its own rules and regulations where they are valid and unambiguous' " and *Pozar v. Department of Transportation* (1983) 145 Cal.App.3d 269 (*Pozar*) for the proposition that "a writ of mandate may be issued to compel a public agency to follow its own internal procedures." For the reasons that follow, we agree with Galzinski that the superior court erred.

"A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." (Code Civ. Proc., § 1085, subd. (a).) Indeed, "[t]he writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law . . . upon the verified petition of the party beneficially interested." (*Id.*, § 1086.) In essence, "[m]andamus lies to compel the performance of a clear, present, and ministerial duty where the petitioner has a beneficial right to performance of that duty." (*Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1265.) "A duty is ministerial when it is the doing of a thing unqualifiedly required." (*Redwood Coast Watersheds Alliance v. State Bd. of Forestry & Fire Protection* (1999) 70 Cal.App.4th 962, 970.)

There is no dispute here that the department complied with its ministerial duty under Penal Code section 832.5, subdivision (a)(1) to "establish a procedure to

7

investigate complaints by members of the public against the personnel of the[] department[]" and to "make a written description of the procedure available to the public." The question presented is whether defendants have a ministerial duty to *follow* that procedure, such that they can be compelled to perform that duty by a writ of mandate. Defendants contend the answer to this question is "no," but they are wrong.

As Galzinski has argued, both in the superior court and this court, the court in *Gregory* held that "[a] public entity has a ministerial duty to comply with its own rules and regulations where they are valid and unambiguous." (*Gregory*, *supra*, 73 Cal.App.4th at p. 595.) But defendants contend Galzinski "incorrectly relies upon *Gregory*," because *Gregory* involved "duties . . . codified in the Government Code and the California Code of Regulations, not an internal policy," and "[t]his is as far as *Gregory* goes." As defendants put it, "*Gregory* does not hold that a public entity has a ministerial duty to comply with its own internal policies and procedures, the specifics of which are not mandated by statute or regulation."

As Galzinski points out, however, defendants' argument does not go far enough. In addition to citing *Gregory*, Galzinski has cited *Pozar* for the proposition that "a writ of mandate may be issued to compel a public agency to follow its own internal procedures." But defendants do not mention *Pozar*, except to note that *Gregory* cited *Pozar*. Thus, they never address whether *Pozar* supports Galzinski's argument that they have a ministerial duty to follow the citizen complaint procedure the department established and made available to the public pursuant to Penal Code section 832.5, subdivision (a)(1).

In fact, *Pozar does* support Galzinski's argument. At issue in *Pozar* was whether Caltrans had a ministerial duty "to follow its published procedure for resolving discrepancies in bid figures." (*Pozar*, *supra*, 145 Cal.App.3d at p. 270.) At the time, "[t]he form Caltrans supplie[d] for bids or proposals contain[ed] the following language as to discrepancies between per-unit and unit price totals: 'In case of discrepancy between the item price and the total set forth for a unit basis item, the item price shall

8

prevail, provided, however, if the amount set forth as an item price is ambiguous, unintelligible or uncertain for any cause, or is omitted, or is the same amount as the entry in the "Total" column, then the amount set forth in the "Total" column for the item shall prevail and shall be divided by the estimated quantity for the item and the price thus obtained shall be the item price.' " (*Id.* at p. 271.)  The petitioner in *Pozar* had submitted a proposal on a contract for a highway construction project that included an estimated quantity of 90 tons of one required product, with a proposed unit price of $20 per ton and a proposed total price of $18,000.  (*Id.* at p. 270.)  As the appellate court observed, "One of the figures [wa]s obviously incorrect.  If the correct unit price [wa]s $20, the total price would be $1,800.  If the $18,000 total [wa]s correct, the correct unit price would be $200 per ton." (*Ibid.*)

Initially, Caltrans "[f]ollow[ed] its established practice and the provision [contained on the bid form and] calculated [Pozar]'s total bid using the per-unit price ($20) times the estimated quantity (90 tons).  Thus calculated, [Pozar]'s total bid was the lowest received.  The bid was then referred to the Caltrans legal office for an opinion.  The legal office concluded the entire bid was uncertain because of the discrepancy and that application of the item price priority rule would be arbitrary.  Noting that the Caltrans engineer had estimated [the product] cost at $300 per ton, the legal office concluded [Pozar] could not have intended to bid $20 per ton and the total bid should include $18,000 for [the product] and be $1,705,980.  Caltrans accepted the opinion and decided to award the contract to another bidder." (*Pozar*, *supra*, 145 Cal.App.3d at p. 271.)

When the superior court denied him relief, Pozar petitioned for a writ of mandate from this court, and the court granted his petition and issued a peremptory writ of mandate without first issuing an alternative writ. (*Pozar*, *supra*, 145 Cal.App.3d at pp. 271-272.)  As the court explained, "[t]his court has no power to direct the award of a public contract to any individual.  [Citation.]  We can, however, direct an agency to

9

follow its own rules when it has a ministerial duty to do so or when it has abused its discretion. [Citation.] Here, . . . we are concerned with a ministerial duty. Caltrans' own rules obligate it to accept the per-unit price in the absence of specified circumstances, none of which are here present. The per-unit price of $20 is neither ambiguous, unintelligible, uncertain, nor otherwise within any exception to the rule." (*Id.* at p. 271.)

*Pozar* thus stands for the proposition that a "published procedure" adopted by a public entity which provides that the public entity *will* do a certain thing (such as calculate, in a particular manner, a bid with an apparent discrepancy in it) *can* provide the basis for a ministerial duty that may be enforced by means of a writ of mandate. That proposition governs here, especially because (as we will explain hereafter) the department published the procedure here pursuant to a statutory mandate.

The facts here show that, in compliance with its duty under Penal Code section 832.5, subdivision (a)(1), the department established a procedure to investigate complaints by members of the public against the department's personnel and made a written description of the procedure available to the public by means of a brochure. Under that procedure, as described in the brochure, a citizen's complaint against a department employee "may be investigated in one of two ways": "It *will* either be forwarded to the employee's supervisor for inquiry or to the Internal Affairs Division for investigation." (Italics added.) Additionally, out of "four possible findings," "[t]he Chief of Police *will* render a finding in each case": sustained, not sustained, exonerated, or unfounded. (Italics added.) Finally, the complainant "*will* be notified of the finding in writing at the conclusion of the investigation." (Italics added.)

As we see it, based on its plain, mandatory terms, the department's published procedure on handling citizen complaints against department personnel imposes a ministerial duty on the department and its personnel to do the following things:

10

(1) A citizen's complaint must be forwarded to the supervisor of the employee who is the subject of the complaint or to the internal affairs division for investigation;[3]

(2) An investigation of some sort must be conducted;

(3) Following that investigation, the Chief of Police must render one of four possible findings: sustained, not sustained, exonerated, or unfounded;

(4) The complainant must be notified in writing of the finding rendered at the conclusion of the investigation.

Under *Pozar*, just as Caltrans had a ministerial duty arising from the mandatory terms in its own published procedure "to accept the per-unit price in the absence of specified circumstances" (*Pozar*, *supra*, 145 Cal.App.3d at p. 271), defendants here had a ministerial duty arising from the mandatory terms in the department's published procedure to: (1) forward Galzinski's complaint to either the supervisor of the employees who were the subject of the complaint or to the internal affairs division, (2) investigate the complaint, (3) render one of the four possible findings, and (4) notify Galzinski in writing of the finding rendered at the conclusion of the investigation.

Although *Pozar* alone is sufficient to support this conclusion, we find further support for it in the fact that the department imposed the foregoing obligations upon itself by establishing and publishing its procedure in fulfillment of the statutory duty imposed upon it by Penal Code section 832.5, subdivision (a)(1). It may be true that nothing in the statute required the department to use the mandatory terms the department used in its

---

[3] We do not find any legal significance in the fact that the procedure provides that a complaint will be forwarded to the employee's supervisor for "inquiry" or to the internal affairs division for "investigation." This is so because the procedure provides that both of these are "ways" in which the complaint will be "investigated." Furthermore, the statute that compelled the department to establish the procedure in the first place requires the establishment of a procedure "to investigate complaints." (Pen. Code, § 832.5, subd. (a)(1).) Thus, even an "inquiry" by an employee's supervisor must qualify as an "investigation."

11

procedure. Nevertheless, having chosen to use those terms, the department cannot escape its obligation to follow those terms without defeating the very purpose of the statute pursuant to which the department acted in adopting the procedure in the first place. This is so because the statutory mandate requiring a police department to "establish a procedure to investigate complaints by members of the public against [the department's] personnel" and to "make a written description of the procedure available to the public" would be meaningless if the department had no duty to *comply with its own published procedure*. Why publish a procedure if you have no obligation to follow it? To accept defendants' argument that they had no duty to follow the mandatory terms of the department's published procedure, because the terms of that procedure were not mandated by regulation or statute, would defeat the very reasonable and settled expectations of the public, who are the intended beneficiaries of Penal Code 832.5. That is a result we cannot countenance. Thus, we conclude defendants have a ministerial duty to follow the mandatory terms of the department's published procedure for handling citizen complaints of police misconduct.

The next question is whether Galzinski has a right to the issuance of a writ of mandate compelling defendants to perform that ministerial duty with respect to his complaint. In his writ petition, Galzinski sought relief focused on the second and third obligations we have identified: specifically, he sought a writ of mandate compelling defendants to "properly investigate [his] complaint . . . and/or make official findings as to the validity of [his] allegations." As we will explain, we conclude Galzinski is entitled to the relief he sought.

With respect to the second obligation imposed by the procedure -- the obligation to investigate -- Galzinski contends that defendants did *not* investigate his complaint; however, that does not appear to be true. Notably, the department's published procedure does not require any particular type of "investigation." To the contrary, the brochure notes that "[e]ach allegation is examined on its own merits" and only "[f]ormal

12

investigations require investigators to contact all available witnesses, including police officers, examine any relevant physical evidence, and gather all information pertinent to each allegation made in the complaint." The brochure does not provide that every complaint will receive a formal investigation. Thus, while the department and its personnel have a ministerial duty to conduct some sort of investigation into every citizen's complaint, the procedure leaves it to the *discretion* of the department and its personnel to determine what *kind* of investigation is reasonably necessary in each case. (See *Elder v. Anderson* (1962) 205 Cal.App.2d 326, 331 ["Discretionary acts are those wherein there is no hard and fast rule as to the course of conduct that one must or must not take"].) "A writ cannot be used to control a matter of discretion." (*Excelsior College v. Board of Registered Nursing* (2006) 136 Cal.App.4th 1218, 1238.) Still, "[a]lthough mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion." (*Helena F. v. West Contra Costa Unified School Dist.* (1996) 49 Cal.App.4th 1793, 1799.)

Here, it appears from the letter from Sergeant Marshall dated July 3, 2014, that Galzinski's complaint was "reviewed" but "no further action" was taken on it because the internal affairs division determined that the complaint could be resolved "[b]ased upon the information [Galzinski] provided." While we disagree with Galzinski that the mere review of the complaint constituted no investigation, we nonetheless conclude that by conducting no investigation of Galzinski's allegations other than reviewing his complaint, defendants abused their discretion. This is so because a mere review of the complaint indisputably could not have sufficed to allow the Chief of Police to render one of the four possible findings required by the department's published procedure.

Galzinski's complaint had three aspects: First, he complained that biological samples were collected from him without a warrant or probable cause. Second, he complained that none of the reports completed by the three officers explained or

13

confirmed "why, where, when, how, and by who the evidence was collected, and the reason this information was expressly left out of [the] reports." Third, he complained that "[n]o receipt or documentation of the tests done [on the samples] and the results of such tests were []ever turned over to [him] at anytime." The four possible findings on these allegations were sustained ("The investigation disclosed enough evidence to clearly prove the allegation"), not sustained ("The investigation failed to reveal enough evidence to clearly prove or disprove the allegation"), exonerated ("The act which proved the basis for the complaint did occur; however investigation revealed the act was justified, lawful and proper"), or unfounded ("The investigation has produced sufficient evidence to prove that the act or acts alleged did not occur"). The descriptions of the four possible findings provided in the department's published procedure plainly imply that any investigation conducted will attempt to determine whether the facts alleged in the complaint are true, which can be the basis for a sustained or exonerated finding, or untrue, which is the basis for a unfounded finding. If the investigation does not disclose enough evidence to clearly prove the truth or falsity of the alleged facts, then the appropriate finding is not sustained. Here, the mere review of Galzinski's complaint could not have provided the Chief of Police with any basis to find Galzinski's factual allegations true or untrue, or with any basis to find that there was insufficient evidence to clearly prove or disprove the allegations. Because the mere review of the complaint could not have sufficed to allow the Chief of Police to render one of the four possible findings required by the department's published procedure, defendants abused their discretion by conducting no further investigation of Galzinski's allegations other than reviewing his complaint. This provides a basis for issuance of the writ Galzinski sought from the superior court.

With respect to the third obligation imposed by the published procedure -- the obligation of the Chief of Police to render one of the four possible findings -- that obligation was not satisfied here because the Chief of Police rendered no finding. Rather, Sergeant Marshall merely declared in his letter dated July 3, 2014, that the issues

14

Galzinski raised "pertain[ed] to points of law which should have been litigated during [his] criminal trial" and "[t]herefore, the proper venue for resolving [his] complaint would be through the appeals process." This is not one of the four possible findings required by the department's procedure. Moreover, the superior court's conclusion that this disposition was "essentially" a determination that the officers against whom the complaint was made were " 'exonerated' " cannot be sustained. Under the department's procedure, exoneration is a finding that "[t]he act which proved the basis for the complaint did occur; however investigation revealed the act was justified, lawful and proper." The conclusion that Galzinski should pursue his complaint in another venue was not, by any stretch of the imagination, a determination that the officers did what Galzinski accused them of doing, but they were justified in doing so; thus, it was not an exoneration. To the extent the superior court relied on arguments defense counsel made at the hearing on the writ petition to justify the actions of the accused officers to support the court's conclusion that the department had "essentially found the officers . . . were 'exonerated,' " those post hoc arguments could not substitute for an actual, proper disposition of Galzinski's complaint by the department in accordance with the department's published procedure.

Furthermore, the assertion that Galzinski should have pursued the resolution of his complaint "through the appeals process" following his conviction on the charges for which he was arrested is simply wrong. The issue raised by Galzinski's citizen's complaint was not whether he was entitled to some relief from his criminal conviction because of the handling of the biological samples taken from him following his arrest. Obviously, that issue *would* have to be pursued in another venue. The issue raised by Galzinski's complaint was whether the officers he named in his complaint committed acts of misconduct by doing what he alleged they did -- nothing more and nothing less. By requiring the department to establish and publish a procedure for investigating complaints of misconduct by department personnel, Penal Code section 832.5 provided Galzinski

15

with the right to submit his complaint to the department and the right to have his complaint resolved by the department in conformance with the terms of the procedure the department established and published. The department simply had no right to resolve Galzinski's complaint by essentially telling him he was in the wrong place, just as the superior court had no right to tell him that the officers were "essentially" " 'exonerated' " because of defendants' post hoc justifications offered at the hearing on Galzinski's writ petition. Thus, the Chief of Police's failure to render one of the required findings as to each of Galzinski's allegations of misconduct also provides a basis for issuance of the writ Galzinski sought from the superior court.

For all of the foregoing reasons, we conclude the superior court erred in denying Galzinski's writ petition.

DISPOSITION

The judgment is reversed, and the case is remanded to the superior court with directions to enter a new judgment granting Galzinski's petition for a writ of mandate. Galzinski shall recover his costs on appeal (if any). (Cal. Rules of Court, rule 8.278(a).)


/s/_____
Robie, J.


We concur:


/s/_____
Hull, Acting P.J.


/s/_____
Butz, J.

16