Filed 1/22/26  Feah v. The City of El Monte CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FEAH, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>THE CITY OF EL MONTE,<br><br>    Defendant and Respondent. | B334407<br><br>(Los Angeles County<br> Super. Ct. No. 20STCP03720) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Law Offices of Jayan Hong and Jayan Hong for Plaintiff and Appellant.

Olivarez Madruga Law Organization, Terence J. Gallagher and Lloyd Pilchen for Defendant and Respondent.

Law Office of Jeff Augustini and Jeff Augustini for Real Party in Interest Eel-El Monte LLC.

Shantar Law and Nicholas S. Shantar for Real Party in Interest Nibble This—El Monte, LLC.

Fitzgerald Kreditor Bolduc Risbrough, and Deborah M. Rosenthal for Real Party in Interest Summit Leasing, LLC f/k/a Light Box Leasing Corporation.

_____

## INTRODUCTION

The City of El Monte (the City) adopted an ordinance authorizing it to license up to six retail cannabis stores.  As directed by the ordinance, the City promulgated guidelines and procedures governing the application process and the awarding of licenses.  When one applicant failed to secure a license, it filed a petition for a writ of mandate in the trial court, arguing the City violated its ministerial duties under the ordinance and abused its discretion in scoring applications.  The petition asked the trial court to issue a writ compelling the City to rescore applications using a neutral third-party consultant.

The trial court denied the petition after a hearing, concluding the City had no ministerial duty to utilize a third-party scorer and did not abuse its discretion in scoring the applications.  The unsuccessful applicant now appeals, challenging the denial of its writ petition.  We agree with the trial court and affirm the judgment denying the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

I.     *Ordinance and Application Guidelines*

The background facts are largely uncontested.  In December 2019, the City adopted Ordinance No. 2960, codified in El Monte Municipal Code (EMMC) section 5.18.010, et seq.[1]  Among other things, the ordinance authorized the licensing of up to six commercial cannabis retail stores in the

_____

[1]     All further statutory references are to the El Monte Municipal Code unless otherwise specified.

2

City.  The ordinance provided, in part, that "the City Manager or designee(s) shall review and score any applications . . . pursuant to objective review criteria adopted pursuant to the necessary application rules."  (§ 5.18.070(D).) It also authorized "the City Manager or designee(s)" to promulgate "any additional rules, regulations, and standards governing the issuance, denial or renewal of commercial cannabis business licenses."[2]  (§ 5.18.300(A).)

Pursuant to section 5.18.300(A), the City published a series of application guidelines titled Application Procedure Guidelines for a Commercial Cannabis Business (the guidelines).  The City's guidelines divided the application process into five phases: (1) submission of applications, (2) review of applications for completeness, (3) review and scoring of applications, (4) issuance of building permits, and (5) issuance of a cannabis business license.

This appeal alleges error in the grading of applications during Phase Three of the process.  In Phase Three, applications were graded based on eight evaluation criteria created by the City, including applicants' business-specific Location Plans, Business Plans,[3] Neighborhood Compatibility Plans, and Community Benefits Plans.  The arguments on appeal are directed at the City's review and scoring of applicants' Community Benefits Plans.

---

[2]     The ordinance also directed the City to "make available the necessary forms, adopt any necessary application rules for the submission, intake, review, and approval of commercial cannabis business license application for retailers" within 60 days of the effective date of the ordinance. (§ 5.18.070(A).)

[3]     Business Plans were required to include financial projections known as a "pro forma" for at least three years of operation.

The Community Benefits Plan had to describe all quantifiable benefits that an applicant's business would provide to the community if granted a license. In practice, these benefits were quantified as monetary contributions to different City programs and/or funds identified in the City's guidelines. The City's guidelines listed the programs "in descending order of preference," with "Monetary contributions to the City to be used for General Municipal purposes" identified as the most preferred contribution.[4] Applicants were allowed to mix contributions to different sources in their proposed Community Benefits Plan. The applicants with the six highest scores in Phase Three proceeded to Phase Four.

The City amended its application guidelines on at least two occasions. At the time applications were submitted, the most recent amended guidelines indicated that City staff would review applications during Phase Two for completeness only, and an unspecified "third-party consultant" would be used to review and score the merits of each application in Phase Three. However, after receiving applications, the City revised its procedure and decided to score applications using a combination of City staff and third-party, SCI Consulting Group (SCI). Specifically, the City Manager, Alma Martinez, decided to designate City employees Betty Donavanik (Donavanik) and Jason Mikaelian (Mikaelian) as the individuals responsible for scoring the Community Benefits Plans and various sections of the Location Plans. The City reasoned that these portions of the applications involved consideration of

---

[4]    Before opening the application process, the City conducted informational workshops and invited questions from applicants about the process. One applicant, GSC Holding Group, LLC ("GSC"), asked the City questions about the application process. During these discussions, the City confirmed that the more an applicant pledged to general municipal purposes, the higher its Community Benefits Plan would score.

neighborhood character, design guidelines, and the City's needs, and the City's employees were therefore better suited to judge these aspects of the applications than SCI.[5]

II.    *Petition for Writ of Mandate*

Petitioner and appellant Feah, LLC (Feah) was one of 19 entities that applied for a retail cannabis license.  Feah finished eighth in the final scoring, and as a result, it did not receive a license.

Feah then initiated this action against the City, naming as real parties in interest the prevailing applicants, including EEL-EL Monte LLC, Nibble This—El Monte, LLC, and Summit Leasing, LLC, f/k/a Light Box Leasing Corporation (real parties).  Feah's operative pleading is the second amended petition filed on March 30, 2021.  As relevant on appeal, Feah's second amended petition alleged the City had a ministerial duty to use a neutral third-party to score the applications, and it failed to satisfy this duty when it decided to score certain portions of the applications using City staff rather than SCI.[6]  Feah also argued that the City abused its discretion in various ways in scoring the applications.

Feah's petition sought a writ of traditional mandamus compelling the City "to re-score the applications with a neutral third-party consultant approved by the Court in accordance with the standards set forth in the

---

[5]    After applications were submitted, the City published a new set of guidelines indicating that portions of the applications would be scored by "City Staff" rather than SCI.

[6]    Feah's second amended petition asserted additional causes of action. However, as Feah does not raise any arguments on appeal relating to those other claims, we do not address them.

[g]uidelines, with the additional requirement that the [City] refrain from influencing the scoring process." Alternatively, Feah asked that the trial court "determine the true winners of the licenses at trial and issue a license to [Feah]."

After briefing and a hearing, the trial court denied Feah's petition for a writ of mandamus. The court reviewed the ordinance and guidelines and rejected Feah's claim that they imposed a ministerial duty on the City to use a third party to score all aspects of the applications. Specifically, the court noted that section 5.18.070(D) expressly provided that applications would be scored by "the City Manager or designee(s)." The court also held that the City's guidelines were issued pursuant to the discretion vested in it by section 5.18.300(A) and were "intended as advice to applicants, not restrictions on the City's scoring process." The court determined that neither the guidelines nor the ordinance contained "any requirement that applicants be notified of a change in who the decision-maker is for all or part of their applications."

The trial court also concluded that the City did not abuse its discretion in scoring the applicants' Community Benefits Plans. The court rejected Feah's claim that the City erred by using a three-year average of applicants' pledged contributions to score the Community Benefits Plans. The court relied on evidence submitted by the City to determine that the City did not abuse its discretion in deciding how to score applicants' disparate community contributions.

Specifically, the court focused on Mikaelian's testimony that, when the City received the applications, it realized that "they were drastically different from each other." Some applications pledged specific dollar amounts, others pledged contributions as percentages of net sales. While the guidelines only required applicants to submit a pro forma for three years of operation, some

6

applicants chose to include projected contributions beyond three years. Upon reviewing the applications, Mikaelian determined that he needed an objective way to compare these disparate contributions to each other. He chose to address this problem by assigning community benefits scores based on "each applicant's three-year average contribution based on their pro forma for . . . three years." In doing so, he reasoned that projections beyond three years "would have been speculative and inherently unequal." The trial court also noted Feah failed to submit evidence showing the City did not consistently apply these judgment calls across all of the applications.

The trial court rejected Feah's argument that some applicants had improper advance notice that contributions to the City's general municipal fund would receive the highest score in grading the Community Benefits Plan. The court found that the City's guidelines notified all applicants that "Community Benefits Plans would be scored, based on the types and amount in monetary contributions they made, with 'General Municipal purposes' the most preferred of the 11 types of community benefits." The court also determined that nothing in the ordinance or guidelines required the City to publicize the precise weight it would give to the contribution categories, and that if Feah had any questions about the ranking of contributions in the guidelines, it could have made the same inquiry that GSC made before submitting its application.

The court concluded by finding that Feah failed to establish any prejudice from the purported scoring errors, noting that even if Feah received the additional 11 points it claimed to be entitled to, it would not have scored highly enough to receive one of the six licenses.[7]

---

[7] The trial court also rejected Feah's claims of error or misconduct in the scoring of other aspects of the applications, including purported errors or

On November 7, 2023, the trial court entered a judgment denying Feah's request for a writ of mandate compelling the City to re-score applications with a third-party scorer.  Feah timely appealed.

## DISCUSSION

A writ of mandamus under Code of Civil Procedure section 1085 may be used to compel the performance of a ministerial duty or to correct an abuse of discretion.  (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 344.)  Feah raises three arguments on appeal: (1) the City violated its ministerial duty to use a neutral third-party to score applications, (2) the City violated its ministerial duty to publish application procedures and guidelines within 60 days of the effective date of the ordinance, and (3) the City abused its discretion in scoring applicants' Community Benefits Plans.

We discuss the City's alleged ministerial and discretionary duties separately.

I.      *Ministerial Duties*

A.      *Legal Standards*

"A court may issue a writ of mandate to compel a public agency or officer to perform a mandatory duty.  [Citation.]  'This type of writ petition "seeks to enforce a mandatory and ministerial duty to act on the part of an administrative agency or its officers."' [Citation.]"  (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 914 (*Collins*).)  "'A ministerial act is an act that a

---

inconsistencies in the scoring of Location Plans.  On appeal, no party has challenged these portions of the trial court's ruling; therefore, we do not discuss them.

8

public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.'" (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) "A public entity has a ministerial duty to comply with its own rules and regulations where they are valid and unambiguous." (*Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584, 595.) We review de novo the question of whether the City had a ministerial duty to act in a particular way, as the question is one of statutory interpretation. (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183; *Collins,* 41 Cal.App.5th at pp. 914–915.)

### B. *Third-Party Scoring*

Feah contends the City had a ministerial duty to use a third-party consultant to score every aspect of the applications during Phase Three. According to Feah, the City failed to carry out this duty when it decided to use City staff such as Donavanik and Mikaelian to score portions of the applications. We disagree.

We turn first to the language of the ordinance, which expressly gave the City Manager the discretion to decide who would score the applications: "the City Manager or designee(s) shall review and score any applications complete pursuant to objective review criteria adopted pursuant to the necessary application rules." (§ 5.18.070(D).) The ordinance does not contain any language limiting who the City Manager may designate to review or score applications. The plain language of the ordinance directly contradicts Feah's assertion that the City was obligated to use a third-party consultant to score the applications. (*New Commune DTLA LLC v. City of Redondo Beach*

9

(2025) 115 Cal.App.5th 111, 130 ["The statute's plain language governs when the words are unambiguous and do not reasonably permit any other construction"].)

Recognizing that this statutory language undermines its argument, Feah instead argues that the City's ministerial duty to use a third-party scorer was created by the City's own guidelines. As with the statutory language quoted above, the plain language of the guidelines directly contradicts Feah's assertion. There is no dispute that the guidelines in effect at the time applications were submitted indicated that scoring would be performed by a third party. However, the guidelines also expressly state that they are not binding and instead "are subject to amendment by the City Manager or designee pursuant to El Monte Municipal Code (EMMC) Section 5.18.300."

We also note that the guidelines were promulgated pursuant to section 5.18.300(A), which provides, in pertinent part, that "the City Manager or designee(s) is authorized to establish any additional rules, regulations, and standards governing the issuance, denial or renewal of commercial cannabis business licenses." In other words, the guidelines were created at the discretion of the City Manager, and the City Manager retained the discretion to amend them.

The record shows the City amended the guidelines on multiple occasions after they were first promulgated. Feah does not contend that the City had no power to amend the guidelines after they were first promulgated. Indeed, by arguing that the amended guidelines published in May 2020 were binding on the City, Feah impliedly concedes that the City had the power to amend the guidelines.

10

The plain language of the ordinance makes clear that the City was not immutably bound to follow the procedures outlined in any version of the guidelines. Instead, the City Manager retained the discretion under sections 5.18.070(D) and 5.18.300(A) to decide who would score the applications. The plain language of the ordinance supports the trial court's conclusion that the guidelines were intended as advice to applicants, not binding restrictions on the City's scoring process.

Feah's reliance on *CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265 (*CV Amalgamated*) is misplaced. In *CV Amalgamated*, the City of Chula Vista enacted an ordinance for licensing retail cannabis stores. The ordinance established a two-phase license application process: in Phase One, applications would be reviewed for completeness. (*Id.* at pp. 270–271.) Chula Vista's ordinance expressly stated that applications could only be rejected at Phase One for non-merit-based reasons that were specifically enumerated, such as incompleteness or untimeliness. (*Id.* at p. 271, fn. 4.)

The dispute in *CV Amalgamated* arose when an applicant had its application rejected at Phase One because it did not "score high enough in a merit-based evaluation conducted by the City." (*CV, supra,* 82 Cal.App.5th at p. 274.) The unsuccessful applicant brought a petition for writ of mandamus, alleging that Chula Vista failed to follow a mandatory and ministerial duty when it rejected the application for merit-based reasons at the Phase One stage. (*Id.* at pp. 280–281.) The appellate court agreed, noting the plain language of the ordinance did not allow Chula Vista to reject applications for merit-based reasons at Phase One. The appellate court determined that a writ of mandate was appropriate to compel Chula Vista to follow the application review procedure required by the ordinance. (*Id.* at p. 283.)

11

Aside from the fact that it arose in the context of cannabis business licensing, *CV Amalgamated* bears no similarity to the facts presented by Feah's appeal. Whereas the Chula Vista ordinance at issue in *CV Amalgamated* plainly prohibited the use of merit-based scoring in Phase One, the ordinance and guidelines at issue here expressly gave the City the discretion to decide who would score the applications. And as Feah acknowledged below, applicants had no right to know who would be scoring their applications at any time during the process.

The same is true of *HNHPC, Inc. v. Department of Cannabis Control* (2023) 94 Cal.App.5th 60 (*HNHPC*), upon which Feah also relies. The petitioner in *HNHPC* filed a petition for writ of mandate alleging the Department of Cannabis Control failed to perform its mandatory duties under the Medicinal and Adult-Use Cannabis Regulation and Safety Act as codified in Business and Professions Code section 26000, et seq. (*Id.* at p. 63.) Specifically, the petition alleged the statutory scheme required the Department to establish a "track and trace" program that would flag irregularities in cannabis transactions for the Department to investigate further. (*Ibid.*) The petition claimed the track and trace system implemented by the Department failed to flag irregularities as required by the statute.

In response, the Department filed a demurrer, alleging that judicially noticeable documents established that it complied with the statutory requirements for its track and trace system. (*HNHPC, supra,* 94 Cal.App.5th at p. 63.) The trial court sustained the demurrer, and our colleagues in the Fourth District reversed, concluding that the Department's documents did not contradict the petitioner's allegations. (*Ibid.*)

12

In reversing the trial court, the appellate court rejected the Department's assertion that its duty under the statute was discretionary, not ministerial. The appellate court examined the language of the statute and determined it imposed a ministerial duty on the Department because it provided that the Department's track and trace system "shall be designed to flag irregularities for the department to investigate" without providing the Department with any "discretion to disregard the express flagging mandate." (*HNHPC, supra,* 94 Cal.App.5th at p. 70.)

*HNHPC* is distinguishable for the same reasons as *CV Amalgamated*: the City's ordinance and guidelines at issue here did not contain any language mandating that all scoring be performed by a third party. Instead, they expressly committed that question to the discretion of the City Manager.

For these reasons, we reject Feah's contention that the trial court erred in determining that the City did not have a ministerial duty to use a third party to score the applications.

C.      *Timeliness of Guidelines*

Feah argues the City failed to timely promulgate grading rules for applications. There is no question that section 5.18.070(A) directed "the City Manager or designee(s)" to provide forms and application rules for retailers to apply for a commercial cannabis business license "[w]ithin sixty (60) days following the effective date of this Chapter." The effective date of the ordinance was December 3, 2019. It is also undisputed that the City and SCI did not develop their respective grading rubrics until August 2020, well beyond the 60 days contemplated by the ordinance.

While the City failed to meet the 60-day timeline specified by the ordinance, it is unclear how this is relevant to the trial court's denial of Feah's writ petition.

Even assuming that the ordinance imposed a ministerial duty on the City to create a grading rubric within 60 days, Feah did not seek a writ of mandate to compel the City to perform this ministerial duty.  Nor could it.  At the time Feah filed its petition, the 60-day deadline had already long since expired.  Any new grading rubric created by the City would necessarily be untimely under the ordinance.  "As a general proposition, courts will not issue a writ of mandate to enforce an abstract right of no practical benefit to petitioner, or where to issue the writ would be useless, unenforceable, or unavailing." (*Kirstowsky v. Superior Court* (1956) 143 Cal.App.2d 745, 749.) The trial court could not compel the City to abide by the 60-day directive, and Feah did not ask it to.

While Feah raised this timeliness argument in its briefing in the trial court, it did so in one short paragraph and did not request any relief in connection with this purported error.  Feah's brief below argued only that the failure to meet the 60-day time requirement "further compound[ed]" the City's failure to use a third party to score the applications.  We have determined the City had no obligation to use a third-party scorer in the first instance.  There is no purported failure here to "compound."

On appeal, Feah does not explain how the timeliness of the City's grading rubric is relevant to the merits of its petition to compel the City to use a third-party to score the applications.  The trial court's judgment is presumed to be correct, and Feah bears the burden on appeal of establishing reversible error.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We agree with the real parties that in the absence of such a showing by Feah,

14

we have no basis to conclude that the trial court erred in denying Feah's petition.

## II.     *Discretionary Scoring Decisions*

### A.     *Legal Standards*

The City's "act of assigning a score to an applicant for a cannabis business license is a quasi-legislative discretionary function, not a ministerial act." (*CV Amalgamated, supra,* 82 Cal.App.5th at p. 284.) In addition to compelling the performance of a ministerial duty, the court may issue a writ of mandate when an agency has abused its discretion in carrying out a discretionary function. (*Id.* at p. 278.) "'Although traditional mandamus will not lie to compel the exercise of discretion in a particular manner, it is a proper remedy to challenge agency discretionary action as an abuse of discretion.' [Citation.]" (*Id.* at p. 279.)

In review of a judgment on a petition for a traditional writ of mandate, an appellate court "'applies the substantial evidence test to the trial court's findings of fact and independently reviews the trial court's conclusions on questions of law.'" (*CV Amalgamated, supra,* 82 Cal.App.5th at p. 280.) In reviewing for substantial evidence, we view the facts in the light most favorable to the trial court's findings. (*Capo for Better Representation v. Kelley* (2008) 158 Cal.App.4th 1455, 1461–1462.) "We do not review the evidence to see if there is substantial evidence to support the losing party's version of events. Our power begins and ends with a determination if there was substantial evidence in the winning party's favor." (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 513 (*Ashby*).) "The burden is on the appellant to show there is no substantial evidence whatsoever" to support the trial court's

15

findings. (*Taylor Bus Service, Inc. v. San Diego Bd. of Education* (1987) 195 Cal.App.3d 1331, 1341.)

In reviewing a discretionary decision, "the court may not substitute its judgment for that of the public entity, and if reasonable minds may disagree as to the wisdom of the public entity's discretionary determination, that decision must be upheld. [Citation.]" (*California Public Records Research, Inc. v. County of Stanislaus* (2016) 246 Cal.App.4th 1432, 1443.)

B.      *Forfeiture*

In arguing the City abused its discretion in scoring the application, Feah ignores the unfavorable evidence and instead argues that it put forth evidence showing that its application could have been scored in such a way as to give Feah a higher final score. But when reviewing for substantial evidence, the question is not whether there is evidence in the record that would have supported a different result below; we only ask whether there was evidence supporting the result that was reached.

Here, the trial court issued a detailed ruling setting out the evidence supporting the City's scoring decisions. As the real parties point out in their appellate briefing, Feah has failed to identify any factual or legal determinations made by the trial court that it asserts were unsupported by evidence below. By failing to acknowledge or discuss that evidence, Feah has forfeited any claim that the trial court's ruling was not supported by substantial evidence. "A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) An appellant

16

who fails to do so will be deemed to have forfeited the claimed error. (*Ashby*, *supra*, 68 Cal.App.5th at p. 513.)

For this reason alone, we could affirm the trial court's determination that the City did not abuse its discretion in scoring the applications.

### C. *The Trial Court's Ruling is Supported by Substantial Evidence*

Even if they were not forfeited, Feah's arguments would fail on the merits.

For example, Feah argues the City abused its discretion by failing to advise all applicants that pledges to the City's general fund would result in a higher community benefits score than contributions to other funds or programs. However, the trial court, relying on evidence submitted by the real parties, concluded that "The Ordinance and Guidelines both make clear that unrestricted pledges for general City purposes would receive the highest ranked preference for community benefits." The guidelines also listed the various programs and funds that applicants could pledge contributions toward to increase their community benefits score. The guidelines specified that the programs were "listed in descending order of preference," with contributions to general municipal purposes listed first. The guidelines thus informed applicants that contributions to general municipal purposes would receive the highest community benefits score.[8]

---

[8] At the hearing on Feah's writ petition, Feah acknowledged the guidelines stated that contributions to the City's general municipal purposes were the most preferred of all potential contributions. Feah also claimed that, despite having this information, it made the deliberate decision to allocate contributions across several different categories because it is "in business to have an impact on the community, a positive impact; right? And donating just to general municipal purposes doesn't mean that there's going

Accordingly, there was substantial evidence supporting the trial court's conclusion that Feah was aware that the City valued contributions to its general fund above contributions to other funds and programs.[9]  Additionally, as the trial court noted, if Feah had a question about the City's contribution preferences, it could have done what GSC did and asked the City for clarification before submitting an application.

Feah similarly claims that the City "inexplicably" decided to average applicants' contributions over three years in scoring the Community Benefits Plans.  Contrary to Feah's characterization, the City put forth evidence below explaining that Mikaelian took three-year averages to directly and objectively compare disparate applications.

All of the purported "scoring errors" that Feah asserts on appeal are premised on the notion that Feah's scores would have been higher if the City considered all years for which Feah pledged contributions rather than utilizing a three-year average for each applicant.  While Feah could have obtained a higher community benefits score if the applications were scored a different way, this does not establish that the City abused its discretion in utilizing a three-year average.  The City was not required to score Feah's application in a way that would maximize its score.  A review of the ordinance and the City's guidelines shows "there are no binding rules requiring that any particular score be given in any particular circumstance." (*CV Amalgamated, supra,* 82 Cal.App.5th at p. 284.)

---

to be that positive impact.  But there was also public safety.  There was also schools."

[9]     The trial court also held that "Nothing in the Ordinance or Guidelines required the City to publicize the weight it would give to the contribution categories."  Feah does not challenge or address this holding on appeal.

There was substantial evidence below that the City's decision to take a three-year average of applicants' contributions was necessary to make direct comparisons between disparate applications. While it is true that the City's guidelines did not specifically advise applicants of this process before applications were submitted, it is also true that this problem did not arise until applications had already been submitted. It was only when the City received applications that it realized there were disparities between applications that rendered direct, objective comparisons untenable. Viewed in this light, the City's decision to revise its scoring rubric after applications had been submitted was not arbitrary, capricious, or "inexplicable." Rather, it was a direct response to new circumstances that were not previously anticipated. Mikaelian's testimony on this point was substantial evidence supporting the trial court's conclusion that the City did not abuse its discretion in scoring the community benefits section.

The trial court acknowledged that Mikaelian made "judgment calls" regarding which years of applicants' pro formas to use to determine their three-year averages. However, it also noted that Feah did not cite any "underlying evidence" showing that Mikaelian made these judgment calls in an inconsistent or arbitrary manner. On appeal, Feah does not allege the trial court erred in this determination. We therefore affirm the trial court's conclusion that the City did not abuse its discretion in scoring the applications.

D. *Prejudice*

"When a party seeking a writ of traditional mandamus has established an abuse of discretion, the issuance of the writ is not automatic. That party also must show prejudice resulted from the public agency's action."

19

(*California Public Records Research, Inc. v. County of Stanislaus, supra,* 246 Cal.App.4th at p. 1449.)

In addition to finding no abuse of discretion by the City, the trial court separately held that Feah also failed to establish any prejudice from the purported wrongdoing in the scoring process. Specifically, the trial court noted that even if it adopted all of Feah's arguments about why its score should have been higher, Feah still would not have placed high enough in the scoring to receive a license. "If, *arguendo*, Feah is credited with this argument its score would be 953. Light Box['s] final score of 963 still prevails over Feah. Feah has failed to [show] prejudice in the City's scoring." (Fn. omitted.)

The same is true on appeal. Even if we assume the City abused its discretion, this alone does not establish that Feah was improperly denied a retail cannabis license. While Feah raises several claims as to why its score should have been higher, it admits in its reply brief that it is "not telling the City . . . what the final score board should look like." Feah has failed to establish prejudice. For this separate reason, we affirm the trial court's ruling.

**DISPOSITION**

The judgment denying Feah's petition for a writ of mandamus is affirmed.  Respondents are awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


MORI, J.


TAMZARIAN, J.